In the Matter of BILL'S GAY NINETIES, INC., Petitioner, against PAULINE FISHER, Doing Business Under the Name of FISHER'S GAY NINETIES, Respondent.

Supreme Court, Special Term, New York County, February 24, 1943.

*Julius Hallheimer* for petitioner.

*Milton N. Mound* for respondent.

VALENTE, J. This is an application pursuant to section 964 of the Penal Law for an injunction restraining respondent from using in connection with her business the designation or name " Gay Nineties ", which is part of petitioner's corporate name and the style under which it is publicly known. Both parties are in the same line of business and petitioner has shown that respondent uses the words " Gay Nineties " either alone or as part of her trade name, depending on whichever form may prove to be more advantageous or profitable at the particular time.

There is no issue of prior user involved, for it is not disputed that the petitioner engaged in business under that name many years before the respondent commenced her activities. It appears that petitioner was the first to use the name in association with the operation of a restaurant and night club. The respondent does not attempt to explain how she comes to use the words " Gay Nineties ", except to assert that they are words merely descriptive of a period in our history. Where, however, a descriptive period or geographical expression becomes associated with a business or brand of goods so that it acquires a secondary significance or meaning, even a descriptive period or locality may become the subject of appropriation. The name of an era or locality is entitled to protection where it acquires a secondary significance in connection with a person's business. It was so held in *Phillips* v. *Governor & Co.* (79 F. 2d 971), where an injunction issued restraining the defendant from using the words " Hudson Bay ", which words are certainly descriptive of a locality. Other instances can be cited: *Rhea* v. *Bacon*, 87 F. 2d 976 (" Inn-By-The-Sea "); *New York World's Fair 1939 Inc.* v. *World's Fair News, Inc.*, 163 Misc. 661 (the words " World's Fair "); *London Terrace, Inc.* v. *London Terrace Garage*, N. Y. L. J., June 16, 1938, p. 2911, Supreme Court, New York County; *Phenix Cheese Co.* v.

*Kirp,* 176 App. Div. 735 (" Philadelphia Cream Cheese ");
*California Fruit Canners' Assn.* v. *Myer,* 104 F. 82; *Koehler* v.
*Sanders,* 122 N. Y. 65; *Cohen* v. *Nagle,* 190 Mass. 4; *Columbia
Grammar School* v. *Clawson,* 120 Misc. 841; Nims, Unfair Com-
petition and Trade-Marks, 3d ed., §§ 36, 37, 101. Countless
commercial and industrial concerns have adopted and operate
by such descriptive names and it can hardly be doubted that
they would be afforded equitable protection from the acts of
usurpers. The law of unfair competition is plastic and " The
invocation of equity rests more vitally upon the unfairness."
(Schechter, The Rational Basis of Trademark Protection, 40
Harvard Law Review, p. 813; *Maison Prunier* v. *Prunier's
Restaurant & Cafe, Inc.,* 159 Misc. 551; *Golenpaul* v. *Rosett,*
174 Misc. 114; *Vogue Co.* v. *Thompson-Hudson Co.,* 300 F. 509,
512.)

Petitioner has demonstrated that it has gone to great lengths
and expense to achieve the reputation it now enjoys. This
good will and reputation have been evidenced by hundreds of
articles and notices appearing in magazines, newspapers and
other publications widely distributed in New York City and
elsewhere. Its business is fostered and enhanced by a spon-
sored and sustaining radio programme, enjoying a national
hookup on one of our leading radio broadcast chains and employ-
ing the same entertainers to be found at petitioner's night club.

It is not surprising, therefore, that " Gay Nineties " as thus
exploited and publicized has come to have a secondary mean-
ing and to be identified in the mind of the public with the
restaurant and night club of petitioner, located in the bor-
ough of Manhattan. It is this good will and trade name
which respondent is invading and impairing. The latter has
prominently displayed the name " Gay Nineties " in several
places in front of her night club in Brooklyn, emphasized
and enlarged these specific words in her advertisements in the
telephone directory and in the classified directory, where they
appear without any qualifying language, and in newspapers,
menus and various other devices clearly simulating petitioner's.

Obviously, the acquisition of the name by respondent was not
in good faith. Then, too, rarely if ever does an imitator assume
the full name of another. The respondent, as part of the scheme,
not only has taken the name, but the business opened by her is
strikingly similar in its main aspects to the original conception
of the petitioner. It attempts to convey the same general idea
and many of its physical characteristics. When we consider
her set-up, while no doubt cheaper, coupled with the use of the

name which was adopted by her in 1941, some eight or ten years after petitioner had opened its establishment and which by that time had been widely advertised, the conclusion is irresistible that respondent was endeavoring to bring to herself that reputation and custom which otherwise she could not have attracted.

Respondent further urges that the petitioner's prayer should be denied because the respective establishments are situated in different boroughs. Nothing seems more firmly grounded today than that distance is no defense. Injunctive relief has frequently been afforded to protect restaurants and hotels, although the respective establishments were distantly removed from each other. (*Maison Prunier* v. *Prunier's Restaurant & Cafe, Inc.*, 159 Misc. 551, *supra*; *Brass Rail, Inc.*, v. *Ye Brass Rail of Mass.*, 43 F. Supp. 671; *Marsh* v. *Billings*, 61 Mass. 322.)

At any rate, a merchant's protection should at least be co-extensive with his market. (Nims, Unfair Competition and Trade-Marks, 3d ed., § 104.)

The cases cited by the respondent have no application. They hold that an injunction will not lie where the names are descriptive of a process or a product. One may not acquire the name of a process or commodity to the exclusion of others. (*Neva Wet Corp.* v. *Never Wet Processing Corp.*, 277 N. Y. 163.)

The fact that respondent, in some instances, prefixes the words by the name "Fisher's" is no defense. Section 964 of the Penal Law contemplates such a situation for its language indicates that the remedy may be invoked where "part of any name, designation or style, or any symbol or simulation thereof" is used. But, as has already been pointed out, she uses the appellation "Fisher's" only on occasions.

The final ground of opposition rests on a construction placed on this statute, to the effect that in order to render it applicable it is requisite that a criminal intent on the part of the respondent be clearly established and that the respondent's intentional violation of this statute must be proved beyond a reasonable doubt. With this contention I do not agree. When the Legislature enacted the statute it did so with the idea of providing a simple and expedient way of dealing with infringers and those devoted to piratical commercial practices. It was never intended that proof beyond a reasonable doubt be required on the civil side of the court. If a complainant were obliged to prove his case beyond a reasonable doubt on the civil side of the court, whereas formerly he only had to establish it by a preponderance of the evidence, the entire purpose of the enactment of section

964 would fail. (See *Matter of Julius Restaurant, Inc.,* v. *Lombardi,* 282 N. Y. 126; *Matter of Fainblatt* v. *Leo Sportswear Co., Inc.,* 178 Misc. 760.)

No material issue of fact is presented requiring a hearing. It is the court's belief, under the circumstances, that respondent's motive for using the words " Gay Nineties " was to cause confusion and mislead the public. The petition is therefore sustained and the application granted. Settle order.