**AMBASSADOR EAST, Inc.**

v.

**SHELTON CORNERS, Inc., et al.**

United States District Court
S. D. New York.
April 27, 1954.

---

1. See also Reich v. Van Dyke, 3 Cir., 107 F.2d 682; Chittenholm v. Giffin, 357 Pa. 616, 55 A.2d 324.

**552**

O'Brien, Driscoll & Raftery, New York City, Edward C. Raftery, Paul D. O'Brien, Milton M. Rosenbloom, New York City, of counsel, for plaintiff.

O'Dwyer & Bernstein, New York City, for defendant Shelton Corners, Inc.

Wien, Lane, Klein & Purcell, New York City, for defendants Lawrence A. Wien, Harry B. Helmsley, Alvin S. Lane and William F. Purcell, associated in a joint venture doing business under the name of Shelton Hotel Associates.

Budner & Budner, New York City, for defendant Hotel Shelton Equities, Inc.

IRVING R. KAUFMAN, District Judge.

Plaintiff moves for a temporary injunction restraining defendants from using the name Pump Room or any facsimile thereof, on the ground that the use of this name constitutes unfair competition and causes irreparable damage to plaintiff's business.

Plaintiff is a Delaware corporation which owns and operates the Ambassador East Hotel in Chicago, Illinois. As part of the operation, and on the hotel premises, plaintiff has a fashionable restaurant and night club known as the Pump Room. From the affidavit of James A. Hart, president of the plaintiff corporation, it appears that the Pump Room was opened on October 1, 1938, and that it was named for a famous 18th Century watering spa and rendezvous for royalty and actors at Bath, England. The affidavit describes in detail the unique character of the Pump Room, and alleges the excellence of its service, food and reputation, as well as the high quality of its clientele. It explains the methods used, and asserts that substantial expenses have been incurred, in advertising this distinctive quality of the Pump Room. For example, the affidavit states that the Pump Room's gross revenue during the last five years totalled $5,500,000. Annual magazine advertising costs for the Ambassador Hotels in Chicago and the Pump Room are stated to be $45,000; $35,000 a year is similarly expended for other public rela-

tions activities which in large measure are devoted to the Pump Room. An estimated $25,000 has been expended for the printing and circulation of pamphlets describing the Pump Room. Assertions of the restaurant's national fame and reputation are supported by extensive quotations from national magazines and other media of publicity which have recognized the high quality of the Pump Room and its distinctive character. The affidavit further states that no expense or detail was spared to make the Pump Room as famous as its English counterpart and that as a result the name Pump Room represents extraordinary quality and character. The replacement cost of the Pump Room today is estimated to be $200,000 to $250,000. During the past year, some $30,000 was spent in renovating the room and a total of $100,000 was spent for the installation of a new air-conditioning system. The affidavit urges that the use of the name Pump Room by any other restaurant confuses the public because of the association in the mind of the public with the Chicago Pump Room, and that should the public find such other restaurant inferior in quality to the Chicago restaurant, the reputation of the Chicago Pump Room will be irreparably damaged. The affidavit notes that it has been brought to affiant's attention that defendants operate a medium class restaurant in New York City called the "Pump Room", in no way similar in decor or in quality of service to the Pump Room in Chicago; that defendants have been notified that they are thereby infringing the valuable trade name of the Chicago Pump Room, and that unless defendants are enjoined, plaintiff will sustain irreparable damage.

Additional affidavits by two New York residents, and by plaintiff's attorney, elaborate upon and substantiate the statements of the Hart affidavit.

Defendants do not deny the general assertions of the plaintiff as to the quality and reputation of the Pump Room, nor do they deny that their New York restaurant is using the name "Pump Room" and that it is a less expensive and less elaborate establishment than plaintiff's. Defendants, however, vigorously assert that there is no competition between their business and plaintiff's; that plaintiff comes before the Court with unclean hands because its use of the name Pump Room rests upon a misrepresentation that it has an authorized connection with the original Pump Room in Bath, England; that defendants have not practiced nor intended to practice any unfairness toward or fraud upon plaintiff and that there is no likelihood of confusion; and that plaintiff has no title or property in or to the use of the name Pump Room in New York. Lester Genser, president of defendant, Shelton Corners, Inc., states in his affidavit of April 15, 1954, that defendants did not copy the name Pump Room from the plaintiff or adopt the name by reason of any publicity that may have been given to it by the extensive advertising of plaintiff. A further affidavit of defendants' attorney indignantly and picturesquely denounces the anti-democratic character of the celebrity-catering Chicago establishment.

It is clear from the undenied assertions of plaintiff's affidavits and from the accompanying exhibits that the name Pump Room is a valuable trade name secured by plaintiff at great effort and expense over the last fifteen years. Plaintiff took the name Pump Room from its English counterpart, with the latter's approval and encouragement. But plaintiff has given the name its own meaning in the United States. When the Pump Room is spoken of in America, I am convinced that the reference is generally understood to mean the plaintiff's establishment in Chicago.[1] Thus plaintiff's trade name is a valuable business asset which it is the policy of the law to protect. Siegel Co. v. Federal Trade

---

1. It is to be noted that the Pump Room in Bath, England, apparently has not been operated *as a restaurant* since World War II. Affidavit of Paul D. O'Brien, plaintiff's attorney, April 6, 1954, p. 4.

Commission, 1946, 327 U.S. 608, 612, 66 S.Ct. 758, 90 L.Ed. 888.

Defendants urge that no injunction should issue since there is no competition or conflict of interests between plaintiff's business and their own. But direct or "market competition" is not an essential ingredient of unfair competition. If one uses another's trade name, he borrows the owner's reputation and good will. "This is an injury, even though the borrower does not tarnish [the name], or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask." Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 974. Furthermore, there is obvious danger of confusion in the instant case, since anyone who had heard of the Chicago Pump Room might be attracted to defendants' establishment in the belief that the New York restaurant had the same characteristics and was under the same management. The plaintiff is entitled to protection against such likely confusion and the damage to its business and reputation which may result, Stork Restaurant v. Sahati, 9 Cir., 1948, 166 F.2d 348, 356; Restatement of Torts, Vol. 3, 597–598, even if neither unfairness nor fraud was intended by defendants. Stork Restaurant v. Sahati, supra, 166 F.2d at page 360; Restatement, supra, at 565. Cf. Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 2 Cir., 1952, 199 F.2d 602, certiorari denied, 1953, 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345; American Chicle Co. v. Topps Chewing Gum, Inc., 2 Cir., 1953, 210 F.2d 680.

Defendants' assertion that plaintiff is guilty of unclean hands in that it has represented an authorized connection between the Chicago Pump Room and its English counterpart is entirely without foundation. Undenied statements in the affidavits, as well as the accompanying exhibits, establish that plaintiff states only that its restaurant was modeled upon the famous English Pump Room and that its operation has been conducted with the full approval and encouragement of the Pump Room in Bath, England.

A temporary injunction is an extraordinary remedy. It is granted only upon a clear showing that the party seeking the injunction is likely to prevail at trial, and where the Court finds that without the injunction the complaining party will suffer irreparable injury. Cf. Foundry Services, Inc. v. Beneflux Corporation, 2 Cir., 1953, 206 F.2d 214. I am convinced, however, that plaintiff has made a sufficient showing of probable success in its action, and that without a temporary injunction it may suffer damage to its reputation which could not adequately be compensated by a later award. Furthermore, plaintiff urges without contradiction that defendants can remove the name "Pump Room" from their advertisements and displays with comparative ease and without interfering with any permanent installations of their restaurant.

The motion for a temporary injunction, restraining defendants from using the trade name Pump Room, is granted. Settle order.