**AMBASSADOR EAST, Inc.,**

v.

**ORSATTI, Inc. and Arnold Orsatti.**

Civ. A. No. 16658.

United States District Court
E. D. Pennsylvania.

Oct. 10, 1957.

Louis J. Goffman, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for plaintiff.

Edward W. Mullinix, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

This is an action brought by the owner of a Chicago restaurant, which has used and widely advertised the name "Pump Room" since 1938, to enjoin defendants from using that name for a Philadelphia restaurant. Defendants used this name on the initial menu adopted in 1951, still use it on a neon sign over the main entrance, but, in general, have referred to this restaurant since suit was brought

as "Orsatti's Pump Room."[1] The hearing judge has concluded that defendants' motion for dismissal of the action, made at the conclusion of plaintiff's case, must be granted for failure of the plaintiff to sustain the burden of proving that the amount in controversy is in excess of $3,-000. See 28 U.S.C.A. § 1331; Kaufman v. Liberty Mutual Insurance Company, 3 Cir., 1957, 245 F.2d 918. Although the defendants' answer admitted the allegation in plaintiff's complaint (paragraph 3) that the amount in controversy exceeded $3,000, defendants stated at page 31 of their brief, filed 9/4/57, "After study of the question, we have concluded that jurisdiction is lacking." F. R.Civ.P. 12(h), 28 U.S.C.A., provides:

"Whenever it appears by suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter, the court shall dismiss the action * * *"

██ As stated in Page v. Wright, 7 Cir., 1940, 116 F.2d 449, 453:

" * * * the conclusion seems inescapable that the duty devolves upon the court 'at any time' the jurisdictional question is presented to proceed no further until that question is determined. It can not be conferred by agreement, consent or collusion of the parties, whether contained in their pleadings or otherwise, and a party can not be precluded from raising the question by any form of laches, waiver or estoppel."

See, also, Brown v. Fennell, D.C.E.D.Pa., 155 F.Supp. 424.

██ In a case such as this, where the decor and general operation of the two restaurants using the trade name is so dissimilar and there is no showing either of confusion in the minds of people in the Philadelphia area or that defendants' operation is of an inferior or poor type (though admittedly different, as well as less elaborate and flamboyant), the method of calculating jurisdictional amount adopted by Chief Judge Charles E. Clark in Pure Oil Co. v. Puritan Oil Co., Inc., D.C.D.Conn.1941, 39 F.Supp. 68, reversed on other grounds 2 Cir., 1942, 127 F.2d 6, is applicable. The injury, present and prospective, inflicted upon plaintiff's trade name, "Pump Room," by defendants' conduct is the measure of the jurisdictional amount. See. also, Draper v. Skerrett, C.C.E.D.Pa.1902, 116 F. 206, 207–208;[2] Food Fair Stores v. Food Fair, D.C.D.Mass.1948, 83 F.Supp. 445, 452, affirmed 1 Cir., 1949, 177 F.2d 177; cf. Seagram Distillers, Inc., v. New Cut Rate Liquors, Inc., 7 Cir., 1957, 245 F. 2d 453, 455–459.[3]

██ Plaintiff has not sustained its burden of proving that the value of such injury is in excess of $3,000 and the cases relied on by it are distinguishable for these reasons, among others:

1. Plaintiff is not operating any restaurant in this jurisdiction[4] or within

1. Plaintiff's attorney wrote defendants on February 10 and February 24, 1954, demanding that defendants cease using the name "Pump Room" for their restaurant (P–78 and P–79). This suit was instituted on April 12, 1954.

2. In this case, the court said at pages 207–208: "It is to be remembered, however, in the present instance, that the plaintiff proceeds for the purpose of protecting his trade-name; and it is the value of that name, *as measured by the damages to it,* not only present, but prospective, which determines the amount in controversy. This the plaintiff avers in the bill to be above the sum of $2,000, and I think the claim is sustained by the evidence. The trade per year taken away by the defendants, if not restrained, would soon exceed that sum, if it does not now do so; and as already intimated, that is the real guide." (Emphasis supplied.)

3. See Note, "Criterion of jurisdictional amount to vest jurisdiction of federal court where injunction is sought," 1953, 30 A.L.R.2d 602.

4. Cases such as Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., D.C.E.D.Pa.1937, 20 F.Supp. 703; Coca Cola Co. v. Busch, D.C.E.D.Pa.1942, 44 F.Supp. 405, are distinguishable since the defendant was actively conducting all or a substantial portion of its business

100 miles of defendants' restaurant. Since plaintiff offered evidence to prove that it was negotiating for the acquisition of a restaurant in New York (N. T. 81),[5] the order dismissing the action will be without prejudice to plaintiff's right to apply for modification of the order if a restaurant is acquired by plaintiff within 100 miles of City Hall, Philadelphia, within ten months of the last day of the trial (4/9/57).[6]

■ 2. The only evidence offered by plaintiff suggesting that defendants could possibly be inflicting any injury, present or prospective, on plaintiff's trade name was that in the last five years over 600 Philadelphians had stayed at their hotels (Exhibit P-17; N.T. 37). There was no showing that these particular people had ever been to either plaintiff's Pump Room or Orsatti's Pump Room,[7] nor was there any evidence of confusion of the two restaurants in anyone's mind.

3. Assuming that the value to defendants of capitalizing on the good will built up by plaintiff in the trade name

"Pump Room" is the measure of damages,[8] there is no showing that any of defendants' customers have heard of the plaintiff's restaurant.

In the event that the hearing judge should be in error in his conclusion that this court does not have jurisdiction of this suit, the Findings of Fact and Conclusions of Law he would make on the merits are stated below:

## I. Findings of Fact

1. Paragraphs 1, 2, 4–8,[9] 10–17, and 19–22 of plaintiff's Requests for Findings of Fact and paragraphs 4–15, 17–22, 24–28, 30, 31, 38 and 39 of defendants' Requests for Findings of Fact are adopted as Findings of Fact by the court.

2. Defendants have used the words "Pump Room" without qualification by insertion of the word "Orsatti's" before those two words on these occasions, among others:

A. The words "Pump Room Menu" were printed at the top of the menu used by defendants in 1951 (P-55).

B. The words "The Pump Room" have been used by defendants in window

---

in the jurisdiction where plaintiff operated. This same factor distinguishes the other cases cited by plaintiff in the last paragraph on page 17, continuing on page 18, of its brief filed 9/3/57.

5. In Stork Restaurant, Inc., v. Marcus, D.C.E.D.Pa.1941, 36 F.Supp. 90, the evidence showed that plaintiff's New York restaurant was extensively advertised in, and patronized by, people from Philadelphia.

6. Since plaintiff produced evidence at the trial that its officers were "negotiating * * * with the hotel in New York, and it is very possible that this deal may be consummated whereby * * * we will want to install a Pump Room there" (N.T. 81), the order dismissing this action for lack of jurisdiction will be made without prejudice to plaintiff's right to show, within 10 months of the trial, that it has in fact acquired a restaurant in New York. If plaintiff should establish a "Pump Room" in New York, the likelihood of confusion, and, hence, possible damage to plaintiff from defendants' activities as described in Findings of Fact Nos. 2 and 3 below, would certainly be greater. Under such circumstances,

plaintiff should be entitled to show the nature and surrounding circumstances of any New York operation under definite contract. However, if plaintiff's negotiations are not completed within the ten-month period, it does not seem unreasonable to require plaintiff to bring another suit at such time as it may be able to prove, more definitely, damages resulting from defendants' operation of the Philadelphia restaurant.

7. Although the testimony indicated that most people making reservations at plaintiff's hotels ask for a reservation to be made at its Pump Room (N.T. 41), there was no evidence that any of these 600 people had done so.

8. See International Industries, Inc., v. Warren Petroleum Corporation, Warren Maritime Corporation, 3 Cir., 248 F.2d 696.

9. Add in the parentheses at the end of plaintiff's Request for Finding of Fact No. 7 these words: "see plaintiff's Exhibits 1–A and 22 for a history of the name 'Pump Room' as developed at Bath, England, and adopted by plaintiff in 1938 and succeeding years."

displays at the Locust Street entrance to its restaurant (P-47 and P-49).

C. The words "Pump Room" are used on a neon sign over the Locust Street entrance to the defendants' restaurant (P-51, P-52).[10]

D. The name "Pump Room" appears on the canopy covering the Locust Street entrance to defendants' restaurant in white lettering, whereas the name "Orsatti's" appears in dark letters on the slanting part of the canopy, above the name "Pump Room", and is not as readily visible as the words "Pump Room" on this canopy (P-48, P-51, P-52).

E. In the October 1955 Philadelphia Classified Telephone Directory, issued by the Bell Telephone Company of Pennsylvania, this listing appeared at page 1050 under the letter "P": "Pump Room Orsatti's" (Exhibit 77B).

F. On a menu used at times from 1952–1956 (N.T. 112–6), the words "Pump Room" appear at the top of the cover of the menu, whereas the name "Orsatti's" appears at the bottom of this menu cover.

G. In numerous advertisements, the name "Pump Room" appears alone and separated from the name "Orsatti's."[11]

3. Defendants have used plaintiff's reproduction of a pump, which insignia has been consistently used by plaintiff in its advertising and literature since 1938 (see P-6, P-7, P-20 to P-23, P-30 and P-2) on the following occasions:

A. Advertisement at page 1040 of October 1953 Philadelphia Classified Telephone Directory issued by the Bell Telephone Company of Pennsylvania (D-13 at D-13A).

B. Advertisement at page 1046 of Philadelphia Classified Telephone Directory of October 1955 (P-77 at P-77B).

C. On its match covers advertising the "Pump Room" (P-57; cf. P-58, containing a similar but very slightly different pump).

D. On its menu used from 1952 to 1956 (P-53, N.T. 112–6).

E. On its "swizzle sticks" used for mixing drinks (P-56).

4. By 1951, the defendant Arnold Orsatti was one of the most successful cafe and restaurant operators in mid-town Philadelphia and at the New Jersey seashore. The Orsatti name was familiar, well known, and prominent in this field in mid-town Philadelphia and at the New Jersey seashore (N.T. 141, 143).

10. The trial judge has had occasion to walk along Locust Street on many occasions since defendants started to operate the Pump Room in 1951, because he has frequently had luncheon at a club located at Locust and Camac Streets. He observed the neon sign "Pump Room" and these words on the canopy (see Finding of Fact 2–D) without ever noticing that they were qualified by the word "Orsatti's" on the top part of the canopy until the winter of 1955 and 1956, when he first had the pleasure of visiting defendants' Pump Room. A person walking up and down Locust Street would think that the Locust Street entrance to defendants' Pump Room was the only entrance to that restaurant and that it had nothing to do with the Bonfire Room at the corner, which is entered from 13th Street. The trial judge rejects defendants' contention that a person walking on Locust Street would think that the sign over the canopy and the words on the canopy were qualified by the large "Orsatti" sign at the southeast corner of 13th and Locust Streets. Also, the

trial judge found on this visit that the quality of service, food, drink and overall management of the Pump Room was of a very high type and not such as to cast any adverse reflection on the name "Pump Room."

11. Daily News of November 1 and November 3, 1951 (P–59); Daily News of May 26, 1952 (P–60), May 28, 1952 (P–60), May 30, 1952 (P–60); Inquirer of May 30, 1952 (P–60); Daily News of September 8, September 10, September 12 and Bulletin of September 12, 1952 (P–61); Daily News of October 20, October 22, and October 24, 1952, Bulletin of October 24, 1952 (P–62); Daily News of December 1, December 3, December 4, December 5, and Bulletin of December 5, 1952 (P–63); Daily News of June 29, 1953 (P–66); Daily News, Bulletin and Inquirer of May 11, 1953 (P–67); Daily News of February 2, 4 and 6, 1953, and Bulletin of February 6, 1953 (P–68); Daily News of January 5, 12, 14 and 16, 1953, Inquirer of January 16, 1953 (P–69).

5. Orsatti's Pump Room has a good reputation for good food and Arnold Orsatti is recognized as a good host (N.T. 150).

6. The words "Pump Room" have a special significance as exclusively denominating and identifying plaintiff's restaurant, as distinguished from all other places in this country. See footnote 14 below.

7. Although the intent of defendants in adopting the name "Pump Room" in 1951 is not clear, their explanation for the adoption of this name as relating to a place alleged to have had that name in Philadelphia during the time of the Revolution does not seem plausible to the trial judge in view of defendants' admitted inability to confirm this in the records of the Historical Society.[12] Also, defendants' use of the identical pump insignia as that adopted and used by plaintiff for several years indicates that the use of this device was, at the least, one which a reasonable man should know might have the effect of making customers think that defendants' restaurant had some connection with that of the plaintiff's.[13]

8. Defendants' use of the name "Pump Room" when not immediately preceded by the word "Orsatti's" (see Finding of Fact No. 2) and defendants' use of the plaintiff's pump insignia (see Finding of Fact No. 3) are of such a nature that they are likely to cause confusion in the minds of the public between plaintiff's operation and defendants' operation.

9. In approximately early October 1956, plaintiff filed application in the United States Patent Office for registration of the name "Pump Room" as a service mark used in conjunction with an operation of a restaurant (N.T. 229–232), but no action had been taken by the United States Patent Office on this application as of the time of trial, April 8 and 9, 1957 (N.T. 233–4).

All requests for Findings of Fact which are inconsistent with the foregoing are denied.

## II. Discussion

The trial judge finds that the name "Pump Room" has acquired a special significance as the name of plaintiff's restaurant in Chicago, since a substantial number of present or prospective customers understand these words, when capitalized, to refer to plaintiff's restaurant.[14] See § 716, including comment b, Restatement of Torts; Stork Restaurant, Inc., v. Marcus, D.C.E.D.Pa.1941, 36 F.Supp. 90; Goebel Brewing Co. v.

---

12. See N.T. 202–4.

13. The defendants' advertising material and literature show that they are quite familiar with pump designs other than the insignia first used by plaintiff and adopted by defendants, as shown in Finding of Fact 3 (see D–7, D–10, and P–74).

14. The numerous exhibits (P–24 to P–41, see summary in Exhibit A attached hereto) disclose the very large amount of free publicity, as well as advertising (P–18A to E, inclusive (magazines); P–19 (Wall Street Journal)), which has made plaintiff's Pump Room well known throughout this country. Even defendants' principal witness (Mr. Gahan, columnist for the Philadelphia Daily News) testified that he knew of plaintiff's Pump Room in 1951 through "many magazine articles" and a public relations entertainment of traveling news commentators conducted by plaintiff with the staff of the Pump Room near the Chicago airport (N.T. 144–5), thereby giving a graphic example of the widespread effect of plaintiff's publicity of the name "Pump Room."

In addition to the references to plaintiff's Pump Room in the magazines of national circulation appearing in Exhibit A, the following references have appeared in Philadelphia newspapers:

P–33 The Philadelphia Inquirer, 10/1/54, column "Man About Town," referring to lettuce eaten by Arthur Godfrey "in Chicago's Pump Room."

P–36 The Philadelphia Inquirer, 11/26/56, p. 18, article on "Era of Elegance in Clothes Ahead," referring to style of tailcoat worn by maitre d'hotel of "Chicago's famous Pump Room," with pictures of maitre d'hotel.

In the Broadway play, "A Girl Can Tell," the producers secured permission from plaintiff to produce, on a backdrop or curtain used in Scene 1 of Act II, a replica of the menu and crest of the Pump Room (see N.T. 86 and p. 19 of P–45). Plaintiff has also used the name and pump insignia on various products

Esslingers, Inc., 1953, 373 Pa. 334, 340–342, 95 A.2d 523;[15] Stork Restaurant, Inc., v. Sahati, 9 Cir., 1948, 166 F.2d 348; Ambassador East, Inc., v. Shelton Corners, Inc., D.C.S.D.N.Y.1954, 120 F.Supp. 551, 553. It is noted that in the last cited case, involving this very "Pump Room," the court said, at page 553, "When the Pump Room is spoken of in America, I am convinced that the reference is generally understood to mean the plaintiff's establishment in Chicago." The trial judge agrees with this statement.

On the other hand, the trial judge concludes that defendants are entitled to use the name "Orsatti's Pump Room," since there is no reasonable likelihood of confusing this name with the name "Pump Room" as used by plaintiff for these reasons:

1. The use of the name "Orsatti's" with "Pump Room" reduces the chances of confusion of the two names in the mind of the public. See Barbary Coast, Inc., v. Exhibition Concessions, Inc., Sup. Ct.1940, 174 Misc. 728, 21 N.Y.S.2d 769;

New Yorker Hotel Corp. v. Pusateri, D.C.W.D.Mo.1949, 87 F.Supp. 294; Soy Food Mills, Inc., v. Pillsbury Mills, Inc., 7 Cir., 1947, 161 F.2d 22, 29–30, certiorari denied, 1947, 332 U.S. 766, 68 S.Ct. 73, 92 L.Ed. 351; General Baking Co. v. Goldblatt Bros., Inc., 7 Cir., 1937, 90 F.2d 241, certiorari denied, 1937, 302 U.S. 732, 58 S.Ct. 56, 82 L.Ed. 566; Best & Co. v. Miller, D.C.S.D.N.Y.1946, 67 F.Supp. 809, 811, affirmed 2 Cir., 1948, 167 F.2d 374, certiorari denied, 1948, 335 U.S. 818, 69 S.Ct. 39, 93 L.Ed. 373; Stroehmann Brothers Co. v. Manbeck Baking Co., 1938, 331 Pa. 96, 100, 200 A. 97; cf. Food Fair Stores, Inc., v. Food Fair, Inc., D.C.D.Mass.1948, 83 F.Supp. 445, 452–453, affirmed 1 Cir., 1949, 177 F.2d 177.[16]

2. Defendants' operation is not similar to plaintiff's operation. Although both restaurants are high type establishments, furnishing excellent food and drink, the decor, dress of the waiters, food specialties and operation of the two restaurants are quite dissimilar.[17] This factor is important on the issue of confusing similarity. See § 729(c) of Restatement of Torts.[18]

---

other than the food sold for consumption at its restaurant, such as a record called "An Evening At The Pump Room" (P–44).

15. The United States Court of Appeals for the Third Circuit has pointed out that "Pennsylvania, in fact, looks to federal decisions and federal precedents for its law of trade-name infringement." Sears, Roebuck & Co. v. Johnson, 3 Cir., 1955, 219 F.2d 590, 592. For additional federal cases, see footnote 4 above; see, also, Brass Rail, Inc., v. Ye Brass Rail of Massachusetts, Inc., D.C.D.Mass.1938, 43 F.Supp. 671.

16. In this case, the court said at pages 452–453 of 83 F.Supp.: " * * * in the light of the lack of originality of plaintiff's trade name and the fact that the confusion of customers and others can be dissipated by small alterations in the symbol, I direct that an injunction shall issue which while it prohibits defendant from using the words Food Fair simpliciter leaves defendant free to use the two words if it *prefaces* them by as distinctive a first word as the name of the chief officer of the defendant or the name of the town, so that the enterprise is call-

ed something like Rodman's Food Fair or Brookline Food Fair."

17. The very unusual nature of plaintiff's operation is well and accurately summarized at pp. 2–6 of its brief. Plaintiff's brief filed 9/3/57 and defendants' brief filed the same day are being placed in the file.

18. Section 729 of the Restatement of Torts contains this language:
"In determining whether the actor's designation is confusingly similar to the other's trade-mark or trade name, the following factors are important:
  *    *    *    *    *
"(b) the intent of the actor in adopting the designation;
"(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;
"(d) the degree of care likely to be exercised by purchasers."
Plaintiff's Pump Room is patronized by theatrical and dramatic personages (defendants' Request for Finding of Fact No. 9 and P–12) and people of some means, due to the prices charged (N.T. 28 and 84), who are likely to be care-

3. The discriminating type of person patronizing either of these two restaurants is not likely to be confused. See § 729(d)[18] of Restatement of Torts.[19]

4. Any improper intent of defendants in using plaintiff's name, "Pump Room," without the word "Orsatti's" (see Finding of Fact No. 2) and in using plaintiff's pump insignia (see Finding of Fact No. 3) can be negatived by requiring defendants to cease such uses without necessitating their giving up the name "Orsatti's Pump Room."[18] Plaintiff's evidence fails to sustain the burden of proving that the use of this three-word name would permit defendants to "reap where they have not sown." Cf. Stork Restaurant, Inc., v. Sahati, supra, 166 F.2d at page 357.

### III. Conclusions of Law

1. Plaintiff has an exclusive right in the name "Pump Room" which extends at least from the Atlantic Coast to Chicago, since it has come to have a special significance, exclusively denominating or identifying plaintiff's business as distinguished from all others.

2. Defendants' use of the name "Pump Room" on its menus, at the Locust Street entrance, as well as in its advertising (including listings under this heading in the phone directory), when not immediately preceded by the word "Orsatti's" and their use of the pump insignia, first used by plaintiff, amount to unfair competition (see Findings of Fact 2 and 3).

3. The name "Orsatti's Pump Room" is not confusingly similar to the name "Pump Room" used by plaintiff, since there is no reasonable likelihood that the public will be confused into believing that the former restaurant is operated by the owners of the latter restaurant.

4. Plaintiff is entitled to an injunction against defendants, prohibiting the use of the name "Pump Room" in advertising and over the Locust Street entrance, on menus, in phone and similar directories, without having the word "Orsatti's" precede the above-quoted two words, and prohibiting the use by defendants of plaintiff's pump insignia (see Findings of Fact 2 and 3), except that defendants should not be required to install a new bar in its lower level restaurant.[20]

All requested Conclusions inconsistent with the above are denied.

### Order

And Now, October 10, 1957, the trial judge having reserved his ruling on the motion of the defendants, Orsatti, Inc. and Arnold Orsatti, to dismiss this action when that motion was made at the conclusion of the plaintiff's evidence[21] (N.T. 134–6) and the trial judge having considered briefs filed by counsel for all

ful about the places they eat. Similarly, defendants' Pump Room is patronized by prominent persons and the average check is $7 to $8 per person, so that these customers are also discriminating (defendants' Requests for Findings of Fact Nos. 21 and 22).

18. See Note 18 on Page 942.

19. This factor distinguishes decisions such as the final decree entered 5/9/46 in Hamburg Heaven, Inc., v. Milton Kellem, Civil Action No. 5570 (E.D.Pa.), perpetually enjoining the defendants from using the words "heaven" and "heavenly" in connection with the word "hamburg" or "hamburger" in the operation of his business. In that case, the plaintiff had operated three restaurants since February 1939 in New York City under the name "Hamburg Heaven" and had ad-

vertised this name in Philadelphia, where the defendant started his restaurant known as "Milton Kellem's Hamburger Heaven." It seems quite clear that persons going to an eating place in order to purchase hamburgers would be more easily subject to confusion than those going to pay the prices charged at the restaurants operated by the parties in this case.

20. Although this bar apparently contains some of plaintiff's pump insignia, clearer evidence of the exact insignia involved and of the cost of removing it would be required before there should be included in an injunction any direction to make costly changes in this relatively large bar.

21. See F.R.Civ.P. 41.

the parties to this action, for·the reasons stated on pages 1 to 5 above, it is ordered that this action against the defendants, Orsatti, Inc. and Arnold Orsatti, is dismissed for lack of jurisdiction of this court, without prejudice to plaintiff's right to reapply within ten months of the last trial day for injunctive relief if it acquires a restaurant within 100 miles of Philadelphia by the time of such application.

EXHIBIT A

Summary of References to "Pump Room" in Articles In Magazines of National Circulation

Exhibit No.

P-24    The Architectural Forum, July 1940, pp. 21 ff., "The Pump Room," commentary on the architecture of the room with pictures at pp. 21, 22, 23 and 24.

P-27    Life, October 18, 1943, pp. 127 ff., article "Life Visits the Pump Room in Chicago," showing pictures at pp. 126, 127, 128, 129.

P-25    Fortune, June 1946, pp. 146 ff., article "Chichi in Chicago," where reference is made several times to the Pump Room. Illustration appears at p. 147.

P-28A   Saturday Evening Post, October 18, 1947, pp. 15 ff., article "Chicago's Gaudy Innkeeper," showing colored picture of Pump Room at p. 15.

P-28B   Saturday Evening Post, October 25, 1947, pp. 38 ff., article "Chicago's Gaudy Innkeeper," where reference is made several times to the Pump Room.

P-28C   Saturday Evening Post, November 1, 1947, pp. 26 ff., article "Chicago's Gaudy Innkeeper," where reference is made several times to the Pump Room.

P-42    Esquire, October 1949, referring to "blazing Pump Room" at p. 162 in article, "Going Places with Esquire."

P-26    Holiday, April 1950, pp. 65 ff., article "The Fabulous Pump Room," showing half-page picture at p. 65, two pictures at pp. 67, 68, 69, 152.

P-32    Coronet, April 1951, article "Finest Lettuce Ever Grown," stating " * * * Bibb received its first push into prominence when a Northern bulb man was lunching in the world-famous Pump Room * * *."

P-34    Saturday Evening Post, 9/1/51, article, "Are You A Fussy Eater," pp. 22 ff., including half-page picture of Pump Room.

P-37    Holiday, October 1951, pp. 102 ff., article "Name Your Cut," commenting on Pump Room at p. 122 and showing colored picture of it at p. 103.

P-39    Look, January 12, 1954, pp. 21 ff., article "Chicago," saying "First stop is the lush, plush Pump Room."

P-40    Life, March 15, 1954, article at pp. 106 ff., on Bobo Rockefeller, showing picture of Mrs. Rockefeller at the Pump Room at p. 115.

P-38    Holiday, May 1954, pp. 14 ff., article, "In four days on a $50 budget, you can take in everything from the Pump Room to the White Sox missing none of the 'biggest and best' of Chicago," showing picture of Pump Room at p. 14 and commenting on it at p. 96.

P-41    Photoplay, July 1954, six pictures taken in the Pump Room appear at p. 22 under title "Celebrity Corner, No shadow of things to come marred the enjoyment of these guests in Booth 1, in the Pump Room of Chicago's Ambassador Hotel * * *."

P-29 Saturday Evening Post, October 9, 1954, advertisement for Hart, Schaffner & Marx men's wearing apparel, which uses the phrase "famous Pump Room," appears on an unnumbered page.

P-35 Town & County, November 1954, article, "My Favorite Hotels," pp. 64–5, 107, 138–9, containing comment on Pump Room at last two pages.

P-31 This Week (magazine appearing in various Sunday newspapers throughout the country), 4/22/56, pp. 4 & 45, column, "The Cerfboard," referring at p. 45 to a man "who was taken to Chicago's Pump Room for what obviously was the fanciest dinner of his life."

The total circulation of the above publications and their circulation in the Philadelphia area are shown in Exhibit P-43.