**AMBASSADOR EAST, INC., Appellant,**

v.

**ORSATTI, INC., and Arnold Orsatti.**

No. 12465.

United States Court of Appeals Third Circuit.

Argued May 5, 1958.

Decided June 26, 1958.

Abraham L. Freedman, Philadelphia, Pa. (Louis J. Goffman, Franklin Poul, Allan H. Reuben, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., on the brief), for appellant.

Edward W. Mullinix, Philadelphia, Pa. (James M. Richardson, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellees.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This is a suit to restrain the defendants from using the trade name "Pump Room" and symbols related to that name in connection with the operation of their restaurant business in the City of Philadelphia. The case was heard and argued in the district court. Thereafter the trial judge had doubts whether the jurisdictional amount was involved, the suit being primarily one to obtain an injunction and the case in federal court by diversity only. So the judge raised the point with counsel for each side. The jurisdiction issue was submitted to the court. The district judge concluded that he did not have jurisdiction, but went ahead and made findings of fact and conclusions of law in case the appellate court thought him mistaken on the jurisdiction point, D.C.E.D.Pa.1957, 155 F. Supp. 937. On the merits, he concluded that the plaintiff was entitled to relief but not to the extent it believes itself entitled. The plaintiff, in this appeal, objects both to the court's conclusion on the matter of jurisdiction and to the limited relief afforded on the merits.

The case has been presented to us by each side with unusual competent thoroughness and the court has been greatly assisted thereby.

That the judge raised the point of jurisdiction was commendable. It is our business in federal courts to make sure that we are entitled to hear and decide the cases brought to us. See McNutt v. General Motors Corp., 1936, 298 U.S. 178, 184, 189, 56 S.Ct. 780, 80 L.Ed. 1135; Kaufman v. Liberty Mut. Ins. Co., 3 Cir., 1957, 245 F.2d 918; Page v. Wright, 7 Cir., 1940, 116 F.2d 449. We think, however, the judge was mistaken in the conclusion he reached and that there was jurisdiction for him to hear and decide this case.

The point which makes the most trouble and about which there was so much discussion in the argument on appeal involves the test to be used in determining the amount in controversy. The defendant says that the proper measure in a case of this sort is the injury, past and prospective, inflicted upon plaintiff's trade name and asserts that the plaintiff has not shown that the damages incurred

therefrom were up to the statutory minimum. The plaintiff, in turn, claims that in an injunction suit the test is the value of the interest sought to be protected. That interest here, it is urged, is the good will attached to plaintiff's name and fame which, according to an express finding by the trial court, is worth more than $3,000.

■■ This Court has gone thoroughly into the question of the necessary elements for an equity suit based on diversity in the case of John B. Kelly, Inc. v. Lehigh Nav. Coal Co., 3 Cir., 1945, 151 F.2d 743, 746, certiorari denied, 1946, 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007. In that case Judge McLaughlin, writing for the Court, said:

> "It is well settled that in an action of this nature, the jurisdictional amount is to be calculated on the basis of the property right which is being injured. If that property right has a value in excess of $3,000 the Federal Court has jurisdiction of such a diversity suit even though the plaintiff had not suffered $3,000 damages at the time suit was instituted."

In the course of the opinion Judge McLaughlin discusses and distinguishes the Supreme Court cases which were urged upon us by the defendant in argument here. He also cites an abundance of authority in support of the conclusion reached as to the applicable test. To these we may add a line of trade name decisions which, in addition, define the right in terms of good will. Seaboard Finance Co. v. Martin, 5 Cir., 1957, 244 F.2d 329, 331; Harvey v. American Coal Co., 7 Cir., 1931, 50 F.2d 832, 834; Beneficial Industrial Loan Corp. v. Kline, 8 Cir., 1942, 132 F.2d 520, 525; Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 1929, 34 F.2d 774, 776-777; Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 1938, 95 F.2d 711, 713.

■ We turn, therefore, to the merits of the plaintiff's case. As indicated earlier this litigation is in federal court by virtue of diversity only. It involves no federal trademark questions but is solely a question of the tort law concerning unfair competition. As the Supreme Court of Pennsylvania has pointed out, in cases of this sort, the federal decisions are particularly valuable. Goebel Brewing Co. v. Esslingers, Inc., 1953, 373 Pa. 334, 95 A.2d 523. Cf. Sears, Roebuck & Co. v. Johnson, 3 Cir., 1955, 219 F.2d 590, 592.

The plaintiff complains of the defendant's use of the term "Pump Room." Plaintiff's "Pump Room" is a dining room in its hotel in Chicago and has been operated as such since 1938. The name is taken from the Pump Room in Bath, England, with the consent and approval of the proprietors of that establishment. Plaintiff's room is bazarre, garish and expensive;[1] the cuisine specializes in dishes served on flaming swords and other exotic items. It is a room where quite evidently patrons go to see and be seen. It has been advertised nationally and publicized through other media.

■ The defendant is a restaurant proprietor in Philadelphia and has been since 1942. The name "Orsatti's Pump Room" and the insignia of a pump was adopted about 1951. In some cases the word "Orsatti's" has not been used before the term "Pump Room." 155 F. Supp. at page 939. "Orsatti's Pump Room" does not specialize in the same kind of things for which the plaintiff's "Pump Room" has become famous. Its physical appearance and method of operation are different. It is claimed that Orsatti got the idea of the name "Pump Room" from an elderly caretaker of the premises in which the Orsatti restaurant was established. But that is not important unless the question of intent at the time of the original assumption

---

1. Perhaps "expensive" is a word which varies with the individual, but there is a finding of fact that the average food check is $5.75 per person; the average beverage check is $2.10.

of the name becomes important and we do not think it does. See Ambassador East, Inc. v. Shelton Corners, Inc., D.C.S.D.N.Y.1954, 120 F.Supp. 551, 554; 3 Callmann, Unfair Competition and Trade-Marks 1526–27 (2d ed. 1950). But see El Chico, Inc. v. El Chico Cafe, 5 Cir., 1954, 214 F.2d 721. Whether adopted innocently or not in the first place, Orsatti became aware of the plaintiff's objection to the use of the words "Pump Room" and nevertheless continued to use it. See 3 Restatement, Torts 565 (1938).

The heart of the plaintiff's claim is that through the years and at great expense it has built up about the name "Pump Room" a distinctive reputation. It may not be the kind of reputation which would meet the approval of Cromwell's Puritans or their modern successors if any. But, nevertheless, because of it, the name has developed a business value which the plaintiff is entitled to have protected. See 3 Restatement, Torts 597–98 (1938).

Judge Learned Hand has described the controlling principle in words which are characteristically apt in a paragraph which has been quoted over and over again by courts in this type of case.[2] We can do no better than to quote it ourselves. He said:[3]

> "His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it

only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

The learned district judge was willing to allow the plaintiff some measure of protection. He insisted that the name "Orsatti" be put ahead of the term "Pump Room." It is there now on the outside marquee of Orsatti's in Philadelphia but the photographs in evidence show pretty clearly that "Pump Room" is very prominent and the "Orsatti's" is not. The judge also thought that if the plaintiff wanted to establish a restaurant within ninety miles of Philadelphia and call it "Pump Room" that the defendant should then be restrained from using the term. Both these contentions too narrowly restrict the plaintiff's protection. It is entitled to have its name protected in full, not modified by other people's qualifying names and, at least on the facts before us, not limited by distance. The distance point is expressly covered by the cases cited below. See also Callmann, op. cit. supra § 76.3(b) (1), particularly at 1204.[4]

Interestingly enough, this problem of protection of names of eating places has come up in quite a number of cases involving restaurants whose proprietors have claimed to have built up far-reaching reputations for themselves. In every instance but one[5] to which our attention has been called the plaintiff has received full protection for the value of his name. Stork Restaurant, Inc. v. Sahati, 9 Cir. 1948, 166 F.2d 348; Nagrom Corp. v. Cock 'N Bull, Inc., D.C.1957, 149 F.Supp. 217; Ambassador East, Inc. v. Shelton Corners, Inc., D.C.

2. See Ambassador East, Inc. v. Shelton Corners, Inc., D.C.S.D.N.Y.1954, 120 F. Supp. 551, 554; Stork Restaurant v. Sahati, 9 Cir., 166 F.2d 348, 355; and cases cited in Annotation 1944, 148 A.L.R. 12, 55, note 212.

3. Yale Elec. Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 974.

4. For a general discussion of the territorial scope of trademark and trade name protection, see Annotation, 1944, 148 A.L.R. 12, 92–125. See also 3 Restatement, Torts § 732 and com. a (1938).

5. El Chico, Inc. v. El Chico Cafe, 5 Cir., 1954, 214 F.2d 721; cf. Faciane v. Starner, 5 Cir., 1956, 230 F.2d 732.

S.D.N.Y.1954, 120 F.Supp. 551; Stork Restaurant, Inc. v. Marcus, D.C.E.D.Pa. 1941, 36 F.Supp. 90; Brass Rail, Inc. v. Ye Brass Rail of Massachusetts, Inc., D.C.Mass.1938, 43 F.Supp. 671; 51 West Fifty-First Corp. v. Roland, 1946, 139 N.J.Eq. 156, 50 A.2d 369; Maison Prunier v. Prunier's Restaurant & Cafe, Inc., Sup.Ct.1936, 159 Misc. 551, 288 N.Y.S. 529; see Bill's Gay Nineties, Inc. v. Fisher, Sup.Ct.1943, 180 Misc. 721, 41 N.Y.S.2d 234; cf. Pike v. Ruby Foo's Den, Inc., 1956, 98 U.S.App.D.C. 126, 232 F.2d 683.

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.