**ATLANTA GAS LIGHT COMPANY and T & C, Inc., Plaintiffs,**

v.

**Joseph Matthew ROBERTS and Elizabeth Bessinger Roberts d/b/a Pirates' House Restaurant, and Patio Drive Inn, Inc., Defendants.**

**Civ. A. No. 74-98.**

United States District Court, D. South Carolina, Charleston Division.

Dec. 23, 1974.

---

9. Note 5 *supra*.

10. *See* note 5 *supra*.

Joseph H. McGee, Charleston, S. C., for plaintiffs.

Robert N. Rosen and Morris D. Rosen, Charleston, S. C., for defendants.

## ORDER

SIMONS, District Judge.

This action was brought by two Georgia corporations against residents of South Carolina for alleged unfair competition. Plaintiff Atlanta Gas Light Company is the owner of certain real property in Savannah, Georgia, which has been used as a restaurant facility since 1950 and is also the owner of the service mark and name "Pirates' House" which has been duly registered pursuant to Georgia law. There is no copyright involved and this case. is *not* brought pursuant to the Lanham Trade-Mark Act.

Plaintiff T & C, Inc., leases the Savannah property and operates the "Pirates' House" restaurant pursuant to a written contract with Atlanta Gas. Since there is no apparent conflict of interest between the plaintiffs, I will not hereafter attempt to distinguish the two corporations, but will merely refer to them collectively as "plaintiffs".

The complaint alleges that the defendants Joseph Matthew Roberts and Elizabeth Bessinger Roberts began the operation of a restaurant near the City of Charleston, South Carolina, under the name of "Pirates' House" in October 1973. Although this allegation of the complaint was admitted in the answer of these defendants, it was subsequently discovered during their depositions, and unknown until then to their attorneys, that the property is actually owned and the business operated by a South Carolina corporation, Patio Drive Inn, Inc., in which Mr. and Mrs. Roberts are the sole stockholders, directors and officers. The court has now by order added this corporation as a defendant to this action by mutual consent of all parties.

The answer of the defendants denies the material allegations of the complaint and alleges that the restaurant operated by the defendants in Charleston does not compete in any way with the restaurant of the plaintiffs in Savannah.

The plaintiffs' basic contentions against the defendants are:

(a) Defendants appropriated the name "Pirates' House" with knowledge of plaintiffs' prior successful, lengthy usage thereof.

(b) Defendants copied, appropriated and duplicated plaintiffs' menu, slogan and other items of publication and advertising.

(c) These acts were done wilfully and wrongfully in an effort to pass off defendants' services as those of plaintiffs' and benefit from plaintiffs' advertising efforts, good will and reputation.

(d) Defendants have been unduly enriched.

The plaintiffs seek an injunction permanently enjoining the defendants from the use of the name Pirates' House or any other confusingly similar name, and from using plaintiffs' trade slogan, advertising copy, and any other items of advertising and identification used by the plaintiffs. In addition, plaintiffs seek monetary damage for lost profits, for injury to their business reputation, and to deter defendants from future acts of unfair competition.

The matter is currently before the court upon the plaintiffs' Motion for Summary Judgment, and the defendants' Cross-Motion for Summary Judgment. Numerous affidavits and exhibits have been introduced by both sides and the court has considered the depositions, heard arguments of counsel, and reviewed counsel's briefs.

There seems to be very little question of fact and most of the following findings are not in dispute.

Of all of the exhibits before the court, the most significant are the menus, a luncheon and dinner menu from the plaintiffs' "Pirates' House", and one menu from the defendants' "Pirates' House". A comparative analysis of these exhibits is sufficient to support many of the court's findings.

### FINDINGS OF FACT

1. Plaintiffs have operated the Pirates' House Restaurant in Savannah, Georgia, for more than twenty (20) years and have expended large sums on advertising locally, regionally and nationally. They have succeeded in establishing a highly successful restaurant business with a distinctive appeal. Their restaurant has won numerous awards and has been frequently mentioned in national publications, including travel and gourmet magazines. During the year 1973, gross receipts for all operations amounted to $1,730,754. During the last ten years of its operation, 1964 through 1973, $292,518 was expended on advertising.

2. The central feature of all of plaintiffs' advertising and promotion is its service mark, the words "Pirates' House" printed in a distinctive scroll and usually colored red or orange.

3. The plaintiffs' slogan is "What foods these morsels be!". This appears beneath the service mark on the cover of the menu and is used frequently in other advertising and promotional materials. The slogan, an obvious pun, was originated by Herbert Traub, Jr., who has managed plaintiffs' restaurant for over twenty years and has a substantial ownership interest in T & C, Inc.

4. Within plaintiffs' menu are a number of unusual phrases and descriptions, including the following:

"Eat, drink and be merry for tomorrow ye diet"

"Devilish good appetizers"

"King Neptune mixed seafood platter —five of your favorite seafoods . . . Nestled happily together on a tremendous platter with hush puppies"

"Miss Edna's Seafood Bisque"

"Rosin-baked potatoes"

"Savannah red rice"

5. The defendants were aware of the Savannah restaurant when they selected the name "Pirates' House" for a new restaurant to be operated on Folly Road, outside of Charleston, South Carolina.

6. The defendants' menu was largely designed by Melvin Roberts, the son of the named defendants, who admitted in his deposition that he appropriated the slogan "What foods these morsels be!" from plaintiffs' menu without permission.

7. Within defendants' menu are numerous descriptive phrases which are substantially similar to the descriptions which have appeared for many years in plaintiffs' menu and which are noted above. The defendants' service mark, as it appears on the cover of their menu, the sign in front of the restaurant and in other advertising copy, practically duplicates the plaintiffs' service mark. When comparing the two menus, the court had difficulty in distinguishing between them. The identical slogan appearing as it does beneath each name persuades the court that the defendants must have selected this name, service mark and slogan with full knowledge that they were infringing upon the rights of the plaintiffs and unfairly competing with it.

8. The defendants' restaurant opened in October 1973, and at the time of the depositions during July 1974, had yet to make a profit. Its advertising budget has been limited.

9. Although the two restaurants are approximately one hundred miles apart, both are located in historic, Atlantic coast cities, and both necessarily cater to some extent to Atlantic coastal tourist traffic. The register of guests maintained by the plaintiffs' restaurant indicates large numbers of out-of-town visitors, particularly travelers hailing from other portions of the east coast, many presumably involved in the Florida-New York traffic.

## CONCLUSIONS OF LAW

A leading case in the area of trade names and unfair competition is the 1948 decision in Stork Restaurant, Inc. v. Sahati, 166 F.2d 348 (9th Cir. 1948). This decision, which has frequently been cited by South Carolina Courts, speaks to many of the questions presented here.

1. Plaintiffs' name "Pirates' House" is admittedly not a registered trade mark, but this is of little significance. In the Stork decision, the court states:

. . . The appellees repeatedly advert to the fact that "There is not involved in this appeal any question of a registered trade mark". While this statement is undoubtedly true, the appellees can derive little comfort from it . . . a firmly established trade name receives the same protection from the law as a trade mark. 166 F.2d 352.

As in Stork, the plaintiffs' contention is not bottomed solely upon an alleged violation of a property right in the trade name "Pirates' House", but upon allegations that the defendants have been guilty of unfair competition by using confusingly similar names, slogans and related insigne.

■ 2. Although there is some evidence that the two restaurants do appeal to the same north-south tourist traffic, direct or market competition is not an essential ingredient of unfair competition; and plaintiffs need not establish competition in the same market. As was stated in the often cited opinion Yale Electric Corporation v. Robertson, 26 F.2d 972 (2nd Cir.), written by Judge Learned Hand and characterized by the court in *Stork* as the epitome of the statement of modern general law:

. . . a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful. 166 F.2d at 354, 355.

■ 3. Although the two restaurants are slightly more than one hundred miles apart, mere geographical distance does not obviate the danger of confusion. The tremendous growth of chain restaurants and franchise operations throughout the country undoubtedly raises in the minds of prospective customers of defendants' restaurant, who are familiar with the Savannah "Pirates' House", that the former is under the same management as the latter.

A comparable case involving restaurants located in Chicago and Philadelphia, both called the "Pump Room", is Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3rd Cir.). In that case, the trial judge put great emphasis on the distance between the two cities and indicated that each was entitled to use the name, provided the defendant qualified it by putting its own name "Orsatti" before the words "Pump Room". On appeal, the Circuit Court stated:

. . . these contentions too narrowly restrict the plaintiff's protection. It is entitled to have its name protected in full, not modified by other people's qualifying names and, at least on the facts before us, not limited by distance. The distance point is expressly covered by the cases cited below.

Interestingly enough, this problem of protection of names of eating places has come up in quite a number of cases involving restaurants whose proprietors have claimed to have built up far-reaching reputations for themselves. In every instance but one to which our attention has been called the plaintiff has received full protection for the value of his name. 257 F.2d 82.

4. At the hearing, the court heard little discussion on the question of damages, however, it appears that plaintiff's gross business has continued to increase steadily, and it apparently will be difficult for plaintiff to prove any substantial monetary loss up until now. Since the court is granting plaintiffs the equitable injunctive relief they seek, they probably would be entitled only to nominal damages, and logically they should not usurp the court's time to pursue such redress, and this order should terminate this litigation.

■■ 5. Whether or not there was a fraudulent intent on the part of these defendants or their agent, Melvin Roberts, is a question the court need not decide. Mr. Roberts admitted in his deposition that he had appropriated the slogan without plaintiffs' permission, but denied any fraudulent intent and even denied that he was aware of the other similarities between the two menus. It is difficult for the court to believe that Mr. Roberts accidentally or innocently chanced upon the same style script as that used by the plaintiffs, or that he adopted plaintiffs' slogan without hoping to benefit from the recognition fac-

tor already developed by the plaintiffs. The burden of a proper explanation of the defendants' action should be upon them, and no suitable explanation has been given. It is perhaps possible that the defendants did not think there would be sufficient overlap of clientele as to amount to unfair competition, but this question of intent is moot. The plaintiffs' name "Pirates' House" has developed a business value which plaintiffs are entitled to have protected.

In a South Carolina case which addresses this point, Judge Cothran in Planters' Fertilizer and Phosphate Co. v. Planters' Fertilizer Co., 135 S.C. 282, 133 S.E. 706 (1926), quoted the following language from L.R.A.:

> But it is not necessary that an actual intent to deceive be shown to entitle one organization to protection against the use of a similar name by another, it being sufficient merely that plaintiff has a superior right to the use of its name, and that the name adopted by defendant is so similar that plaintiff's business and the purposes for which it was organized will be injuriously affected by its continued use. 133 S.E. at 708.

6. Defendants have submitted exhibits designed to show that there are numerous commercial establishments in this part of the United States with the word "Pirate" in their title. Most such businesses are obviously located on the coast and many are restaurants, cocktail lounges and the like. Defendants assert that they should be allowed to continue the use of the word "Pirates'", even if otherwise required to change their name. Had the defendants originally used a similar, but not identical name (for example "Pirates' Restaurant"), and had they not appropriated plaintiffs' slogan, printing style, etc., then there obviously would have been no actionable, unfair competition. But having already created, whether deliberately or otherwise, an atmosphere of confusion as to the source and ownership of the two establishments, defendants should not have the degree of freedom of choice they originally had. The court

is responsive to the argument of the plaintiffs that continued use of the word "Pirate" by defendants would perpetrate, albeit to a lesser extent, the unfair competition which has existed for the last year.

The court therefore concludes that, on the record before it, plaintiffs have established their right to injunctive relief against the defendants. It is therefore

Ordered that:

1. The defendants, their officers, agents, servants, employees and attorney, and all those persons in active concert or participation with them, who receive actual notice hereof, are hereby perpetually enjoined and restrained from:

   a. Using directly or indirectly the name "Pirates' House" or any other name including the word "Pirates" or any form thereof.

   b. Using directly or indirectly a script identical to or any colorable imitation of the script in plaintiffs' service sign, "Pirates' House".

   c. Using directly or indirectly the slogan "What foods these morsels be!", or any colorable imitation thereof.

   d. Using directly or indirectly any unique, descriptive phrase or slogan which appears in either of the plaintiffs' two menus, or any colorable imitation thereof, especially the descriptive phrases referred to in this order.

   e. Using directly or indirectly any name, sign, script, slogan, descriptive phrase, color combination or other indicia of the plaintiffs' that suggests or reasonably tends to suggest a connection with the plaintiffs.

2. The defendants shall have sixty (60) days from the date of this order to comply with this injunction as set forth above.

3. The question of what damages, if any, the plaintiffs may recover from the defendants shall be for trial at the next term of this court, provided plaintiffs insist upon proceeding further.

And it is so ordered.