## KNIGHTS OF THE KU KLUX KLAN v. STRAYER et al.

Circuit Court of Appeals, Third Circuit. August 13, 1929.

No. 3929.

J. H. Connaughton and W. F. Zumbrunn, both of Washington, D. C., for appellant.

Van A. Barrickman, of Pittsburgh, Pa., and L. C. Walkinshaw, of Greensburg, Pa., for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and RELLSTAB, District Judge.

WOOLLEY, Circuit Judge. The District Court entered a decree dismissing the plaintiff's bill. On this appeal the argument has centered on the reasons which the court gave for its action rather than on the decree itself. As we are concerned only with the validity of the decree, we shall endeavor to pierce the confusion which, because of the bitterness of the controversy, envelops the case and go directly to the pleadings for the true issues and to the testimony for the decision.

The plaintiff, commonly designated Knights of the Ku Klux Klan, Invisible Empire Knights of the Ku Klux Klan, The Ku Klux Klan and The Klan, showed by its bill that it is a corporation of Georgia, organized for benevolent, religious and charitable purposes, empowered to establish local lodges known as Klans throughout the United States, authorized to confer degrees and exemplify ritualistic work, secret obligations, words, grips, and signs, collect dues, and, for failure by any subordinate lodge or its members to observe the constitution, to banish them from the order; in all of which it claims supreme right, authority and power. The plaintiff by its bill further averred that the named defendants, banished members of the Klan, conspired to injure it by inducing other members to secede from the organization, thereby depriving it of annual dues and per capita taxes in vast sums; that the banished members clandestinely maintain unlawful Klans, operating as individual units of the parent order under the Klan name; have collected admission fees and annual dues in large amounts; that they are in possession of large numbers of robes, helmets, lodge altars, flags, bibles, books, papers, etc., all property of the plaintiff, the national order, and are guilty of other doings not necessary here to recite. The plaintiff therefore prayed first for a temporary and then a permanent injunction restraining the defendants from in any wise doing the acts complained of, that they be required to account for and deliver to it all its property so improperly acquired and held, and in addition pay it the sum of $100,000. The defendants by their answer took issue on all averments of the bill and in addition filed a counterclaim and asked the court to appoint a receiver for the plaintiff corporation. The court held against the counterclaim and refused to appoint a receiver. As the defendants have not appealed, we, of course, pass by these matters.

Such was the bill. What did the plaintiff prove to support the averments on which it grounded its right to the varied relief it sought? It proved its charter and thereby proved its charter purposes. Then, quite abruptly, it shifted to proof of its averment that the defendants had been banished from the order and on this proof a bitter controversy immediately arose as to whether their banishment was according to the constitution and therefore lawful, or high-handed and arbitrary and therefore unlawful. We shall not pause to decide whether the banishment was valid, for, if valid (though it reveals an exercise of despotic power quite beyond belief) still the plaintiff, to obtain the relief it prayed, must have proved that the banished members were guilty of the wrongdoing it charged against them.

The plaintiff produced eight witnesses, three of them defendants. They gave no testimony as to the conspiracy charged; they did not prove that the defendants had persuaded other members to secede or had collected and possessed large sums of money and had thereby deprived the plaintiff of vast revenues, the only sum proved to be in the defendants' possession being, on comparison with the amount claimed, the insignificant sum of from twenty to twenty-five dollars; nor did they show that the paraphernalia which the plaintiff seeks to recover belong to it; but proved, on the contrary, that they be-

long to individual members. These issues, being the bases of the prayers for an accounting and injunction, wholly disappeared in the conflict over banishment. In truth, the plaintiff did not support by evidence any of the averments of the bill essential to the relief it asked for except the defendants' use of its mystic name, and this it did merely by proving its charter, wherein it is described as "a purely benevolent and eleemosynary society," and proving the defendants belonged to lodges which, so far as was shown, were conforming to the principles of the organization. And so the many questions raised by the bill are on the evidence reduced to the single one whether the plaintiff is entitled to an injunction restraining the defendants from belonging to or in any way maintaining lodges bearing its name, which the plaintiff regards (but has not proved) are out-law lodges.

Assuming without deciding that the defendants have been banished from the Klan and the charters of their lodges forfeited, the plaintiff would, the defendants concede, ordinarily be entitled to equitable relief forbidding the use of its name, but the defendants assert and the trial court found that in its own use of the name the hands of the plaintiff reaching out for this relief are unclean, and so unclean as to move the court to refuse the relief which otherwise it would freely give.

The defendants, by a score of witnesses, all, save one, members of the Klan banished or in good standing and therefore informed and qualified to tell the truth, produced evidence which fully sustained the court's findings of fact that the plaintiff, operating through a small group of men, in violation of its own charter and its worthy purposes, has established and is maintaining in certain areas a form of despotic rule opposed to the rights and liberties of the people, that in given instances it imposed severe corporal punishment upon persons not members of its order in violation of the constitution and laws of the land, that on named occasions it stirred up racial and religious prejudices, fomented disorder, and encouraged riots and unlawful assemblages which resulted in breaches of the peace, bloodshed and loss of life. See fact findings in Knights of Ku Klux Klan v. Strayer et al. (D. C.) 26 F. (2d) 727.

To contradict or lessen the force of this evidence, the plaintiff introduced no testimony, but, on objections seasonably made, took the position—which it its main contention on this appeal—that, even if true, evidence of these acts, occurring at different times and in different places, was inadmissible because foreign to and in no sense connected with the controversy between it and the defendants in this case.

We accept without qualification the law which the plaintiff offered to support this contention. It is indeed well settled that the inequity which will dismiss one from a court of equity under the maxim that "he who comes into a court of equity must do so with clean hands" must relate directly to the matter concerning which he complains. Cunningham v. Pettigrew (C. C. A.) 169 F. 335, 344. It is to wrongful conduct in the very act or matter which constitutes the plaintiff's ground of action—not to past and unrelated sins—that the maxim applies, for it is only such conduct that can operate as a wrong or inflict injury upon the defendants of which they can avail themselves as a defense. Shaver v. Heller & Merz Co. (C. C. A.) 108 F. 821, 65 L. R. A. 878; Trice v. Comstock (C. C. A.) 121 F. 620, 628 (61 L. R. A. 176).

Applying this rule to the proofs in the case, it appears that the plaintiff was incorporated as "a purely benevolent and eleemosynary society" and organized for "benevolent, religious and charitable purposes" and when so operating it would have the right to the exclusive use of its corporate name. It introduced no evidence that it performed any of the purposes for which it was incorporated and organized. The defendants, however, proved that in many instances its activities and purposes were quite opposed to those declared in its charter and constitution. Both parties in this case are using the corporate title; each claiming the right and cherishing its signification. The controversy concerns the lawfulness of that use. That is the very matter which constitutes the plaintiff's (remaining) ground of action. What the parties are doing with the name or doing under the name has a direct relation to its lawful use. If the plaintiff is misusing it, that has a direct relation to the defendants' use of it, and may inflict an injury upon them. If the defendants also are misusing it, that may be in derogation of the plaintiff's right; but, even so, the plaintiff, disregarding its charter and constitution and engaging in practices antagonistic to its declared purposes, cannot hide its hands and demand equitable relief.

We hold the evidence to which the plaintiff objected as irrelevant was admissible, that it was enough to sustain the fact findings made, and that the decree of the trial court dismissing the bill must, for the reasons it gave and the additional reasons we have given, be affirmed.