**LINCOLN RESTAURANT CORP. and Collins Restaurant Corp., doing business as a joint venture under the firm name and style of Wolfies and Wolfies Twenty-First Street Restaurant, Inc., Plaintiffs,**

v.

**WOLFIES REST., INC., Defendant.**

**Civ. A. No. 16936.**

United States District Court
E. D. New York.
June 16, 1960.

Shapiro, Gubman & Sitomer, New York City, by Joseph Gubman, New York City, of counsel, for plaintiffs.

Raphael, Searles, Levin & Vischi, New York City, by Joseph A. Solovei, Brooklyn, N. Y., of counsel, for defendant.

BYERS, District Judge.

This is an unfair competition case in which plaintiffs, two Florida restaurant corporations conducted as a joint venture, seek to enjoin the defendant, a New York restaurant corporation, from using the name "Wolfies" in any manner. Thus it is a true diversity case.

The circumstances are unusual in that the parties are not in direct competition, since they operate in areas so widely separated as Miami Beach (and perhaps other places) in Florida, and the Borough of Brooklyn in the City of New York.

If the theory of the plaintiffs is understood, it is that they have the right to protest against the use in Brooklyn of their trade name because of the large number of persons from Brooklyn who visit Miami Beach during the tourist season, and patronize the plaintiffs. In other words, that the trade name and good will of the plaintiffs may not be legally transported to Brooklyn and taken advantage of by the defendant in the prosecution of its own business through the mere adoption of the name "Wolfies."

Since the same activity—the conduct of restaurants—is common to both, the plaintiffs' cause cannot be said to be lacking in substance, in light of the evidence presently to be discussed.

It has been effectually established that the plaintiffs do not claim to have suffered any financial loss to be traced to the use of the name "Wolfies," which eliminates any such aspect of the controversy.

It is not disputed that the plaintiffs as early as 1952 began doing restaurant business in Miami under the name "Wolfies" or "Wolfies Restaurant." The process which led to that development is presently unimportant. Nor is there any question that the business so established grew and flourished in the succeeding years, down to the time when this suit was started in September of 1956. There were extensive advertising expenditures by the plaintiffs during these years.

The important inquiry with which the court is concerned at the outset, is whether the adoption of the name "Wolfies" by the defendant was a purely fortuitous thing, or a deliberate effort to create a false impression to the effect that the Florida restaurants and that of the defendant constituted the same or related enterprises.

Of course the defendant denies any such purpose or intent, and argues that the very remoteness of Brooklyn from Miami · proves the innocence of its motives in assuming the trade name "Wolfies." It is required therefore to weigh the evidence closely to reach a conclusion on this aspect of the case.

That the plaintiffs jointly operate two large and flourishing restaurants in Miami Beach, Florida, under the name "Wolfies" is an undisputed fact; also that the word "Wolfies" is prominently displayed on large electric signs (8 ft. x 12 ft.) in connection with each establishment and that during the tourist season they serve together some 10,000 customers per day. The advertising done is extensive and includes newspapers, radio and television.

The said two restaurants have used "Wolfies" as their trade name since not later than January of 1952. So much is conceded and hence requires no finding.

There is substantial evidence that the plaintiffs and their predecessors used the name as early as 1947, but no finding is made to that effect since the fact of priority is more important than its precise stature.

The defendant restaurant was opened about February 12, 1954, and the corporation was organized January 5, 1954. These dates are not contested and hence require no finding.

There was actual knowledge on the part of the defendant corporation at the time the name "Wolfies" was adopted, that there was a "Wolfies" restaurant in Florida. That fact was testified to by defendant's vice-president, Gilman, and is thus established for present purposes, not having been contradicted by any other officer of defendant.

Since the choice was informed and deliberate, all legal consequences flowing therefrom were necessarily reckoned with by the defendant. .

 A recent quotation from Karen etc. v. Chiaverotti, D.C., 181 F.Supp. 827, 830, seems justified, although the facts in that case were more stringently against that defendant than are here present:

"In any event, as stated in Adam Hat Stores, Inc. v. Scherper, D. C., 45 F.Supp. 804, 806, any rights of a second user in a territory not already occupied by the first user are subject to the conditions:

" ' * * * that the second user must have innocently adopted the mark and must show it was not adopted for the purpose of forestalling the first user's extension of his mark in that territory.' "

For a succinct statement of the rights of a prior user of a trade name, see White Tower System v. White Castle etc., 6 Cir., 90 F.2d 67, at page 70.

 As bearing upon the reasons for the selection of the name in litigation, the testimony for the defendant is (p. 361):

"The Witness: (Gilman) There were several reasons why we used it, your Honor.

"The Court: What did you use it in connection with? (*Note*, he had said that the name was adopted 'prior to opening the store.')

"The Witness: Number one, Sam Pollack's father, who helped him along in getting into this deal with us, his name is Wolf Pollack.

"Number two, Joe Gershman has been called Wolfie since he has been a boy.

"Number three, the sign, and it still is there, is a sign reading Jackie's, a stainless steel sign across the entire length of the building.

"We tried to save money and so conserve expenses, and because the previous reasons, we still have the word, I–E–S, saved, and salvaged from that sign, and we added W–O–L–F."

As to the first, Samuel Pollack is the president of the defendant, but why *his* father's name should have been chosen to identify the defendant's restaurant, as so stated, is not easy to follow, in the absence of a convincing statement by Pollack himself on the subject.

Concerning the second reason, Joseph Gershman, the secretary and a stockholder of the defendant, is said to have been known by the name Wolfie since boyhood because of his manifest attractions for the opposite sex. His age does not appear, but the reason in 1954 for reverting to his adolescent proclivities, when the defendant's business was established, for the purpose of creating a commercial identity, impressed the Court as being entirely synthetic.

Reason three, the economical use of the electric sign, becomes obviously trivial when the number of available four letter masculine name abbreviations is brought to mind.

The explanation thus offered for the selection of the name "Wolfies" is found to be specious and incompatible with anything but a purpose to capitalize in Brooklyn upon the trade name "Wolfies" first adopted by the plaintiffs in Miami Beach, Florida, as heretofore stated.

Any possible doubt concerning the foregoing is dispelled by a comparison between Plaintiffs' Exhibit 1, the menu used by plaintiffs at the time of institution of this suit, and Plaintiffs' Exhibit 4, a menu used by defendant in 1954, and probably in 1955, although the record is not clear as to that.

The second so closely resembles the first in color, pictorial design, arrangement and general appearance, as to exclude any purpose in its adoption save to make as close a copy of the plaintiffs' menu as the circumstances of different locations would permit, and thus to suggest a close relationship between the plaintiffs' and the defendant's establishments.

In the event of an appeal from this decision, I venture to suggest that these two exhibits be physically submitted for the inspection of the reviewing court.

The testimony of defendant's witnesses as to how the defendant's said menu came to be adopted, including that of the printer, is rejected as being palpably unconvincing; the exhibits speak for themselves with overwhelming persuasion. The defendant's case gained nothing from this testimony.

A later version of Exhibit 4 contained the words "Not connected with any other establishment" in red $\frac{1}{16}''$ letters at the bottom of the center or inside of the menu.

How far those words so appearing would divert attention from the entire showing made by the outside of the cover, is too argumentative for present discussion. They should be considered, however, in conncetion with the words,

"Wolfie's Floridian Style French Toast,"

"Wolfie's Floridian Style Foundation Creations,"

"Wolfie's Floridian Style Sundae Delights,"

all of which appear either on the inside, or back cover. The assertion that the terminology was suggestive of flowers rather than Florida, is characteristic of the defendant's entire presentation.

458

The plaintiffs caused written notice to be given to the defendant, under date of April 20, 1954, to cease and desist from using the name "Wolfies" which contained these words "That if you don't accord with this notice, we will take advantage of our legal rights."

The letter was ignored, but served the purpose of putting the defendant on notice (within two and one-half months of the opening of the restaurant) that the continued use of "Wolfies" might involve legal consequences. The defendant chose to disregard this notice, and in so doing must be held to have contemplated all probable consequences.

With the factual finding above made, it is required to consider certain contentions of law advanced by the defendant:

(1) The plaintiff is confronted by *Res Judicata*.

■ This draws attention to a proceeding in the Supreme Court of New York, County of Kings, which resulted in an order dated December 3, 1954, denying these plaintiffs' motion for statutory relief, in a proceeding under Section 964 of the New York Penal Law, McKinney's Consol.Laws, c. 40, having to do with the alleged unlawful use by the present defendant of the word "Wolfies" within the contemplation of the statute.

The legal effect of that proceeding was the subject of an opinion by Judge Zavatt dated March 25, 1960, D.C., 186 F.Supp. 570, as the result of a motion made by the defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for summary judgment.

It is unnecessary to repeat what appears in the said decision which denied the motion on the ground that this being an action for unfair competition, the issues are not the same as those presented to the State Court.

An order was entered pursuant to said decision, from which no appeal was taken (See, as to appealability, Federal Glass Co. v. Loshin, 2 Cir., 217 F.2d 936), and it therefore effectually disposed of the question for present purposes.

The said State Court proceeding is of interest in that it shows that during the year 1954 these plaintiffs undertook to pursue certain legal remedies against this defendant touching the matters here in controversy, although that effort seems to have been ill advised as a matter of law.

It results that as to this argument, the defendant cannot prevail.

■ (2) There is no actual competition between these parties and therefore the plaintiffs cannot succeed, because of the territorial difference in their fields of activity.

There are cases which seemingly support this contention, such as:

Lerner Stores Corp. v. Lerner, 9 Cir., 162 F.2d 160:

This case involves the use by defendant of his own surname, Lerner, not a fanciful trade name having no true significance as a family name. The other facts discussed in the opinion clearly distinguish the issues with which that court had to deal from those here involved. Thus the decision is not apposite.

Pike v. Ruby Foo's etc., D.C., 116 F. Supp. 336:

This case involved a receiver's sale of corporate assets, which the court held to include a trade name. Comments in that connection are confined to the question presented for decision.

Carroll v. Duluth, etc., 8 Cir., 1916, 232 F. 675:

To the extent that the opinion discusses geographical limitations in an unfair competition case, it cannot be regarded as of current authority.

El Chico, Inc., v. El Chico Cafe, 5 Cir., 214 F.2d 721:

The parties were not in the same line of business and therefore relief was denied to plaintiff.

The following cases are in point as to the facts involved, and are clearly authorities to the effect that the plaintiffs are entitled to the relief that they seek: Ambassador East, Inc. v. Orsatti, Inc., 3 Cir., 257 F.2d 79; Stork Restaurant

v. Sahati, 9 Cir., 166 F.2d 348; Stork Restaurant Corporation v. Marcus, D.C., 36 F.Supp. 90; Brass Rail, Inc. v. Ye Brass Rail, etc., D.C., 43 F.Supp. 671; Ambassador East v. Shelton Corners, D. C., 120 F.Supp. 551; Maison Prunier v. Prunier's Restaurant, etc., 159 Misc. 551, 288 N.Y.S. 529.

In conclusion, it is to be observed that even if the defendant believed that it was within its legal rights, under the circumstances, in adopting and using the name "Wolfies," this was a mistaken view, and cannot deprive the plaintiffs of the cause that they have pleaded and adequately presented.

Decree is ordered for plaintiffs for an injunction as prayed, on the merits; and since they have adequately waived any claims for damages, which could not have been proved according to the testimony, the judgment will be so limited.

If additional findings are desired, they are to be settled on notice.

Settle decree.