291 F.2d 302
 LINCOLN RESTAURANT CORP. and Collins Restaurant Corp., doing business as a joint venture under the firm name and style of "Wolfies," and Wolfies Twenty-first Street Restaurant, Inc., Plaintiffs-Appellees,
v.
WOLFIES REST. INC., Defendant-Appellant.
 No. 160.
 Docket 26567.
 United States Court of Appeals Second Circuit.
 Argued February 21, 1961.
 Decided June 5, 1961.
 
 Theodore R. Kupferman, New York City (Schnur, Kupferman & Price, Sidney O. Raphael, and Robert Price, New York City, on the brief), for defendant-appellant.
 Joseph G. Gubman, New York City (Shapiro, Gubman & Sitomer, New York City, on the brief), for plaintiffs-appellees.
 Before HINCKS and MOORE, Circuit Judges, and BRENNAN, District Judge.*
 HINCKS, Circuit Judge.
 
 
 1
 Plaintiffs are the proprietors of two well known restaurants and sandwich shops, both called "Wolfies," in Miami Beach, Florida. Defendant, with knowledge of plaintiffs' prior use, opened a restaurant called "Wolfies" in Brooklyn, New York. Plaintiffs brought suit to protect their common law right to their trade name. Judge Byers below enjoined defendant's use of the name, the plaintiffs having waived all claim to damages, and defendant appeals.
 
 
 2
 Defendant's principal argument here is that there was no proof that plaintiffs had established a secondary meaning or likelihood of confusion in the Brooklyn area and that therefore plaintiffs failed to present a case. It is true that Judge Byers made no express finding on secondary meaning. This does not, however, require reversal. Plaintiffs' restaurants are exceedingly well known in the Miami Beach area. They are each of approximately the same size and each display an enormous electric sign. There was evidence that prior to the complaint they did an aggregate gross business of $2,500,000 per annum, paid rent of upwards of $95,000 per annum, and spent about $25,000 annually for advertising on buses, taxicabs, and in several newspapers mostly in the Miami area. They had a combined payroll of $10,000 weekly. Together, in the tourist season they served 11,000 persons a day. It was conceded that at least 5,000 Brooklynites visit Miami Beach every year. The president of one of the plaintiffs testified that periodic polls at the door of his restaurant showed that 50 to 60 per cent of his daily patronage was from Brooklyn.[1] A popular television personality, on a national program emanating from New York and seen in many cities, mentioned that "many prominent theatrical people and sports people usually go to Wolfies after their show and entertainment" when in Miami Beach. This was not a paid-for commercial message, but a spontaneous remark apparently connected with a factual description of Miami Beach life. There was also testimony that Wolfies had been mentioned by a New York night club entertainer and another television personality. The president of one of the plaintiffs testified that when he attended a meeting of the National Boxing Association in New York, most of those present knew of and spoke of the plaintiffs' restaurants, although they came from all parts of the nation. From evidence such as this, the inference seems proper that "Wolfies" means the Florida restaurants, even to residents of Brooklyn.
 
 
 3
 But even if we assume that a secondary meaning was not established, the order still should be affirmed. Although after plaintiffs objected to defendant's use of the name defendant added a legend — "not connected with any other establishment" — to its menu, it did little if anything else to dispel the possible belief of its customers that they were eating in a Brooklyn branch of plaintiffs' enterprises. Indeed, such a belief was apparently encouraged, by a menu similar in color and format to that of plaintiffs', which featured such items as "Wolfie's Floridian Style French Toast," "Wolfie's Floridian Style Fountain Creations," and "Wolfie's Floridian Style Sundae Delights." All this evidence lends solid support to Judge Byers' finding that defendant's adoption of the name "Wolfies" is compatible with nothing but "a purpose to capitalize in Brooklyn upon the trade name `Wolfies' first adopted by the plaintiffs in Miami Beach." Thus intent to trade on plaintiffs' reputation and plaintiffs' name was specifically found, and we see no distinction between this and ordinary "palming off" in a products case. As this court has recently recognized, "a court of equity will restrain such practices as constitute palming off, actual deception or appropriation of another's property" even absent proof of secondary meaning. Norwich Pharmacal Co. v. Sterling Drug, Inc., 2 Cir., 271 F.2d 569, 571, certiorari denied 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739. See Santa's Workshop, Inc. v. Sterling, 3rd Dep't, 2 A.D.2d 262, 153 N.Y.S.2d 839; Upjohn Co. v. Schwartz, 2 Cir., 246 F.2d 254. Cf. Yale Elec. Corp. v. Robertson, 2 Cir., 26 F.2d 972. That plaintiffs' and defendant's restaurants are far apart is not necessarily a decisive fact. See, e. g., Ambassador East, Inc. v. Orsatti, Inc., 3 Cir., 257 F.2d 79 (Chicago "Pump Room" obtains injunction against Philadelphia restaurant); Stork Restaurant, Inc. v. Sahati, 9 Cir., 166 F.2d 348 (New York "Stork Club" obtains injunction against San Francisco tavern); Vaudable v. Montmartre, Inc., 20 Misc.2d 757, 193 N.Y.S.2d 332 (Paris "Maxim's" obtains injunction against New York restaurant).
 
 
 4
 Appellant also claims that the dismissal of an application by appellees for an injunction pursuant to New York Penal Law McKinney's Consol.Laws, c. 40, § 964, which makes it a misdemeanor for one with intent to deceive the public to assume the corporate, assumed, or trade name of another and provides for injunctive relief, is res judicata here. There is no substance to this contention. Section 964 requires proof by affidavit and such absence of a factual issue that the case would be appropriate for summary judgment under New York practice. An unsuccessful § 964 petitioner, "of course, may be entitled to the relief it seeks in a plenary action * * * The two remedies are not to be confused." Industrial Plants Corp. v. Industrial Liquidating Co., 1st Dep't, 286 App.Div. 568, 146 N.Y.S.2d 2, 7.
 
 
 5
 Appellant's other contentions are similarly without merit.
 
 
 6
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation
 
 
 [1]
 On a previous occasion he had testified that this percentage of his patronage derived from the City of New York
 
 
 
 7
 MOORE, Circuit Judge (dissenting).
 
 
 8
 Here is another example of the anomalous situation created by the courts' endeavors to grant a non-statutory monopoly through the medium of the "unfair competition" doctrine, which monopoly goes far beyond that bestowed by legislative enactment.[1] Plaintiffs operate restaurants in Miami Beach, Florida, under the name "Wolfies." Apparently, "Wolfie" was the nickname of a gentleman by the name of Wilfred Cohen. Had he been named Edward Cohen, Samuel Cohen, Gerald Cohen or Joseph Cohen, he, if nickname minded, would doubtless have considered such distinctive names as "Eddie's," "Sam's," "Jerry's," and "Joe's" for his restaurant.[2] If endowed with the not too uncommon name "Smith," he would have used "Smitty's"[3] and, for some reason, every "Moore" in the restaurant business must be a "Dinty."
 
 
 9
 The restaurant, apparently of the glorified sandwich and ice cream type, achieved popularity with certain elements. Subsequently some 1,400 miles away in Brooklyn, New York, opposite the campus of Brooklyn College (some 25,000 students) appeared a similar type restaurant also using the name "Wolfies." It not only took the name "Wolfies" but imitated the menu format and presumed to confuse the international situation by offering in Brooklyn Floridian French Toast. Upon the trial instead of saying, "I copied Wolfies of Miami; what's wrong with that?", defendant indulged in a series of fantastic explanations. First, the father of a friend was named Wolf Pollack. Second, an officer of defendant, was a "wolf," meaning thereby a person whose vaunted attraction for the opposite sex met with a fair degree of success and reciprocity. Third, the electric sign which had borne the previous name "Jackies" could be easily and cheaply altered by substituting "Wolf" for "Jack."
 
 
 10
 Were the underlying principles of the law of unfair competition not of paramount importance here, defendant's explanatory efforts could well merit the award of affirmance. But the case is not thus easily to be disposed of. A restaurateur in the southeastern part of the country takes unto himself a not too unique nickname for a restaurant and straightway obtains without statutory sanction a permanent monopoly to the exclusion of every other inhabitant of our fifty states. This result will not withstand analysis. To the trial court, "This is an unfair competition case * * *" yet he finds "that the parties are not in direct competition." This circumstance is considered "unusual" as indeed it is. On appeal the suit is "to protect their [plaintiffs'] common law right to their trade name." Plaintiffs advance the theory that the trade name "Wolfies" is a valuable asset and that priority of use gives to the prior user the exclusive right to it.
 
 
 11
 I cannot but believe that unfair competition should mean (1) competition and (2) that it is unfair. Obviously, there is no competition between Wolfies (Miami) and Wolfies (Brooklyn). If the Brooklyn College student who seeks physical rehabilitation from his mental debilitation caused by a two-hour examination believes that he is walking across the street into Wolfies of Miami, he would truly be in a state of post-examination shock. Nor is it possible that a family from the midwest, anxious to visit Wolfies, would find itself in Brooklyn instead of Miami. Everyone gets lost in Brooklyn — but not that lost. The trial court itself has found "that the plaintiffs do not claim to have suffered any financial loss to be traced to the use of the name `Wolfies,' which eliminates any such aspect of the controversy." 185 F.Supp. 454, 456. The court, however, was greatly influenced by defendant's flagrant appropriation of the name. But intent is not controlling. A trade name implies trade. If trade is not affected, there is no loss.[4] There is no "chance that this [the use of the name "Wolfies"] will deflect buyers who would otherwise buy of the putative other source * * * [which would cancel] the second comer's privilege of reproducing the original, which he has in common with the public at large (Judge Learned Hand in American-Marietta Co. v. Krigsman, 2 Cir., 1960, 275 F.2d 287). Furthermore, there is no proof or even claim that plaintiffs' name, credit, reputation for quality, or kindred assets are being tarnished by defendant.
 
 
 12
 Recognition must be given to the many cases in which the restaurant name is quite unique such as the "Stork Club,"[5] the "Pump Room,"[6] "Cock 'N Bull"[7] and "Ruby Foo."[8] All these cases can be put into the deception category because of the unusual name. The courts, unfortunately, can never avoid the task of making distinctions or drawing border lines. If the courts are to look for legislative guidance as to national policy relating to monopoly, the statutes (buttressed by Supreme Court decisions) disclose a tendency to grant monopolies in a most restrictive manner limited in time and bestowed only upon a showing of merit. It may well be that a "Stork Club" or a "Pump Room" should qualify for exclusionary protection as against an ordinary citizen named "Joe" but quaere whether a restaurant operator using a soubriquet in its familiar or diminutive form "Wolfie" can in this day and age claim such uniqueness whether it emanates from a name or from a characteristic. In my opinion, such a holding disregards the principles of unfair competition recently declared in this Circuit.[9]
 
 
 13
 I therefore would reverse and dismiss the complaint.
 
 
 
 Notes:
 
 
 [1]
 See the comment of Judge Clark in his dissent in American Safety Table Company, Inc. v. Schreiber v. Goldberg, 2 Cir., 1959, 269 F.2d 255, 277, certiorari denied 1959, 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185, "The all but wholly obscured truth is that the well-known concept of unfair competition is being employed to fashion and shelter a monopoly * * *". The dangers to which Judge Clark adverted were heeded in the second opinion, 287 F.2d 417, 419 (decided February 28, 1961), wherein the court said, referring to a perpetual monopoly established via unfair competition, "We certainly never intended any such result. On the contrary, as indicated in the opinion again and again, we intended no departure from the basic principles of the law of unfair competition as stated in this Circuit."
 
 
 [2]
 With respect to the service of food, in the New York Manhattan 1961 telephone book, "Eddie's" is found 7 times, "Jerry's" 5 times, "Joe's" 13 times, even "Wolfies" once. In the Brooklyn book, "Eddie's" 4 times, "Jerry's" 8 times and "Joe's" 27 times. Other cosmopolitan centers would probably contribute a proportionately equal number of similarities
 
 
 [3]
 In New York and Brooklyn, "Smitty's" is found 3 times
 
 
 [4]
 A leading English case describes the principle upon which the courts act in protecting a trade name as being the protection of a plaintiff from a loss of business caused by confusion as well as the protection of the public from being misled by misrepresentations. Levy v. Walker, 1879, 10 Ch.D. 447
 
 
 [5]
 Stork Restaurant, Inc. v. Sahati, 9 Cir., 1948, 166 F.2d 348
 
 
 [6]
 Ambassador East, Inc. v. Shelton Corners, Inc. et al., D.C.S.D.N.Y.1954, 120 F.Supp. 551
 
 
 [7]
 Nagrom Corporation v. Cock 'N Bull, Inc., D.C.D.C.1957, 149 F.Supp. 217
 
 
 [8]
 Pike v. Ruby Foo's Den, Inc., 1956, 98 U.S.App.D.C. 126, 232 F.2d 683
 
 
 [9]
 American-Marietta Co. v. Krigsman, 2 Cir., 1960, 275 F.2d 287; Speedry Products, Inc. v. Dri Mark Products, Inc., 2 Cir., 1959, 271 F.2d 646; Norwich Pharmacal Company v. Sterling Drug, Inc., 2 Cir., 1959, 271 F.2d 569