**METROPOLITAN FEDERAL SAVINGS AND LOAN ASSOCIATION OF NEW YORK, Plaintiff,**

v.

**EAST BROOKLYN SAVINGS BANK (a/k/a Metropolitan Savings Bank) and Brevoort Savings Bank, Defendants.**

No. 70-C-10.

United States District Court, E. D. New York.

June 8, 1970.

Isadore B. Hurwitz, New York City, for plaintiff.

Shea, Gallop, Climenko & Gould, New York City, for Metropolitan Savings Bank sued herein and formerly known as East Brooklyn Savings Bank; William Schurtman, Anthony J. Napodano, New York City, of counsel.

Baar, Bennett & Fullen, New York City, for Brevoort Savings Bank, Herbert Bernstein, New York City, of counsel.

*Memorandum of Decision and Order*

MISHLER, Chief Judge.

This is an action by the Metropolitan Federal Savings and Loan Association of New York (Metropolitan Federal), a savings and loan association incorporated pursuant to the Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461–1468, to enjoin defendants East Brooklyn Savings Bank (East Brooklyn), also known as Metropolitan Savings Bank, and Brevoort Savings Bank (Brevoort), soon to be acquired by East Brooklyn, from using the name Metropolitan as part of their corporate name. Plaintiff bases its claims for relief on the law of unfair competition and the antitrust laws, Sherman Act § 1, 15 U.S.C. § 1, and Clayton Act § 7, 15 U.S.C. § 18.[1]

*Jurisdiction*

■ During the pretrial proceedings, defendants asserted and subsequently withdrew [2] a challenge to the jurisdiction of the court over the subject matter of the action. The parties, however, cannot confer subject matter jurisdiction upon the court by agreement. The issue therefore remains before the court.

■ The court has jurisdiction over the antitrust claim, 28 U.S.C. § 1337, notwithstanding plaintiff's failure to allege in its complaint that defendants' planned merger under and use of the name Metropolitan for the purpose of pirating plaintiff's good will will have an adverse effect on commerce. In view of the late stage in the proceedings at which the antitrust claim was asserted, the absence of any claim of surprise by defendants, and the fact that this defect can easily be cured by an amendment, the court does not regard the defect as fatal. David & David, Inc. v. Myerson, 277 F. Supp. 973 (E.D.N.Y.1966), affirmed, 388 F.2d 292 (2d Cir. 1968).

■ Having decided that the court has federal jurisdiction of plaintiff's antitrust claim, it is unnecessary to reach the question of whether plaintiff's unfair competition claim itself "arises under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, or "any Act of Congress regulating commerce or protecting trade or commerce against restraints and monopolies," 28 U.S.C. § 1337. First, since plaintiff's claim for unfair competition plainly shares a common nucleus of operative fact with the antitrust claim, the court would have pendent jurisdiction over it if it were based on state law. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Second, even if the court were to determine that the unfair competition claim presented a federal question—a conclusion warranted in

---

1. Plaintiff added the antitrust claim at trial.

2. Defendants now take the position that the court has jurisdiction over the subject matter. They have, moreover, offered argument in support of the court's jurisdiction and have emphasized their interest in an adjudication on the merits. They have indicated that such an adjudication is important to the completion of their agreement to merge under the name Metropolitan Savings Bank.

this case only if it were decided that the congressional policy manifested in the Home Owners' Loan Act of 1933 mandates the application of federal common law, see Ivy Broadcasting Co. v. American Tel. and Tel. Co., 391 F.2d 486 (2d Cir. 1968); Bartsch v. Metro-Goldwyn-Mayer, Inc., 391 F.2d 150 (2d Cir.), cert. denied 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed. 2d 96 (1968); Murphy v. Colonial Fed. Sav. and Loan Ass'n, 388 F.2d 609 (2d Cir. 1967); McFaddin Express, Inc. v. Adley Corp., 346 F.2d 424 (2d Cir. 1965), cert. denied 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966); T. B. Harms Co v. Eliscu, 339 F.2d 823 (2d Cir. 1964), cert. denied 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965)—the body of law applied to the claim would not differ from that applied if it were decided that state law governed the resolution of the issue. There is no appreciable difference between the federal and New York laws of unfair competition. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 697 (2d Cir. 1961); Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614, 619 (2d Cir. 1962).

### The Facts

The plaintiff was originally chartered as a savings and loan association under the laws of the State of New York in 1953 with the corporate title, "The Metropolitan Savings and Loan Association." Plaintiff had one office, its main office, at 75–25 Metropolitan Avenue, Middle Village, in the Borough of Queens, City and State of New York. In the year 1960, it opened a branch office at 116–22 Metropolitan Avenue, Kew Gardens, in the Borough of Queens. The offices are within two miles of each other and service the Kew Gardens and Middle Village sections of Queens.

In 1967, plaintiff converted to a federal savings and loan association pursuant to the Home Owners' Loan Act of 1933. The Federal Home Loan Bank Board authorized the use of the name Metropolitan Federal Savings and Loan Association of New York.

Defendant, East Brooklyn, was organized in 1860 under the name East Brooklyn Savings Bank of the City of Brooklyn, which name was subsequently abbreviated, in 1925, to East Brooklyn Savings Bank.

On November 15, 1968, East Brooklyn filed an application with the Superintendent of Banks of the State of New York for permission to change its name to Metropolitan Savings Bank. Said defendant's application assigned as a reason for the change that the Board of Trustees of the bank believed that the proposed name would more accurately describe "the geographic scope of the bank's services than the present name." The application for the change was published in a weekly bulletin issued by the Banking Department of the State of New York on November 22, 1968. The use of the name was vigorously contested by the Manhattan Savings Bank on the ground that it had merged with a bank known as Metropolitan Savings Institution in 1942 and therefore had some right in the name Metropolitan in relation to its use in banking. The Superintendent of Banks rejected the claim and a notice of approval was published in the weekly bulletin issued by the Banking Department on August 8, 1969. On October 3, 1969 the weekly bulletin published an authorization for a change of name from East Brooklyn Savings Bank to Metropolitan Savings Bank effective at the close of business on September 30, 1969. East Brooklyn has four offices, all located in Brooklyn.

On December 9, 1969, defendants, East Brooklyn and Brevoort, applied to the Superintendent of Banks for permission to merge under the name Metropolitan Savings Bank. Brevoort has five offices, four located in Brooklyn, and one located at 64–02—108th Street, Forest Hills, Queens, New York.

On December 22, 1969, the plaintiff filed an objection to defendants' use of the name Metropolitan Savings Bank with the Superintendent of Banks. The Superintendent approved the merger in the name Metropolitan Savings Bank effective June 30, 1970.

### Antitrust Claim

■ Plaintiff cites United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed. 915 (1963), United States v. First Nat'l Bank & Trust Co., 376 U.S. 665, 84 S.Ct. 1033, 12 L.Ed. 2d 1 (1964), and United States v. Pabst Brewing Co., 384 U.S. 546, 86 S.Ct. 1665, 16 L.Ed.2d 765 (1966) in support of its antitrust claim. It has failed, however, to offer anything close to sufficient evidence of the effect which the proposed merger of East Brooklyn and Brevoort under the corporate name Metropolitan can be expected to have on competition among savings banks. The antitrust claim must, therefore, be dismissed.

### Unfair Competition Claim

■ In view of the considerable interest of both plaintiff and defendants in an early decision on the merits and the fact that the trial has been concluded, the court will exercise its discretion in favor of assuming pendent jurisdiction over plaintiff's unfair competition claim. United Mine Workers v. Gibbs, *supra*.

■ The plaintiff attempted to show that the name Metropolitan has acquired a secondary meaning when used in connection with a savings institution and specifically that the public identifies the use of the name Metropolitan with the plaintiff's banking services. Where a secondary meaning is established, the likelihood of confusion is presumed and it then becomes the burden of the secondary user to show that confusion is unlikely. Norwich Pharmacal Co.

v. Sterling Drug, Inc., 271 F.2d 569, 571 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960). It is plaintiff's position that variations of its corporate name, i. e., Metropolitan Savings, Metropolitan Savings Bank, Metropolitan Savings Association, have become identified in the public mind with the plaintiff's institution. The only proof offered in support of this claim are exhibits in the form of checks mailed by the plaintiff's mortgagors. Abbreviations such as these on checks for mortgage payments do not sustain the plaintiff's position. Having failed to establish a secondary meaning in the use of variations of its corporate title, therefore, the plaintiff must show that the defendant " * * * has indulged in one of the proscribed practices which equity will enjoin," i. e., palming off, actual deception, or appropriation of another's property, in order to succeed in this action. Norwich Pharmacal Co. v. Sterling Drug, Inc., *supra*, 271 F.2d at p. 571.

East Brooklyn has been operating under the name of Metropolitan Savings Bank since October 1, 1969. There is no showing of any attempt by East Brooklyn to palm off the services of that bank to the public as the services of the plaintiff bank.

The plaintiff has approximately 13,000 depositors, almost all of whom reside in the Borough of Queens and the majority of whom reside within walking distance of the plaintiff's two banking offices. The plaintiff's total deposits are about $36,000,000. The plaintiff does little advertising. It has a billboard, which it rents at the rate of $100 per year, and pays approximately $4,000 for direct mail advertising. The mailing is directed primarily to its depositors and to residents of the neighborhood.

East Brooklyn has approximately 70,-000 depositors and deposits of approximately $227,000,000. It does extensive advertising in newspapers and on local radio at a cost of approximately $40,-000 per year. Brevoort has about 82,-

000 depositors, with total deposits of about $276,000,000. Combined, the defendants have about 152,000 depositors and $503,000,000 in deposits.

The plaintiff first advised the East Brooklyn of its objection to the use of the name Metropolitan in defendant's corporate title by letter dated December 9, 1969. Until that time, neither defendant was aware of the existence of the plaintiff bank.

The defendants made application in good faith to the Superintendent of banks of the State of New York and relied on the Superintendent to search the index of names in the Banking Department before approving a change of name as provided by sections 9014 and 9016 of the New York Banking Law. This is not a case of the defendant attempting to appropriate or trade on the plaintiff's name. Lincoln Restaurant Corp. v. Wolfies Rest. Inc., 291 F.2d 302 (2d Cir.), cert. denied 368 U.S. 889, 82 S.Ct. 143, 7 L.Ed.2d 88 (1961); Thomson Indus., Inc. v. Nippon Thompson Co., 298 F.Supp. 466, 478 (E.D.N.Y.1968); Metropolitan Life Ins. Co. v. Metropolitan Ins. Premium Fin. Corp., 264 F.Supp. 507 (S.D.Fla.1966).

There is little likelihood of confusion. There is testimony that a depositor of East Brooklyn told Mr. Kraut, the president of the plaintiff bank, that he understood that there was a merger between plaintiff and Brevoort. There is also testimony that an investigating service called the plaintiff bank believing it to be the defendant bank. This is hardly evidence of confusion.[3]

Similarity in the names of competing banks must be distinguished from similarity in the names of businesses competing in the sale of merchandise. Relatively absent from competition among banks is the likelihood of confusion often created by shops with similar names competing next door to each other or packaging their products in look-alike packages with similar labels and similar slogans. See Maternally Yours, Inc. v. Your Maternity Shop, 234 F.2d 538 (2d Cir. 1956).

██ Authorization to open branches is carefully exercised. Federal savings and loan associations, as in this case, have been prone to advise the public that they are federal institutions. Depositors have learned to distinguish between a savings bank and a federal savings and loan association. This degree of sophistication permits a greater degree of similarity in names. General Adjustment Bureau, Inc. v. General Ins. Adjustment Co., 381 F.2d 991 (10th Cir. 1967); Lawyers Title Ins. Co., Inc. v. Lawyers Title Ins. Corp., 71 App.D.C. 120, 109 F.2d 35 (1939), cert. denied 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1028 (1940).

The complaint is dismissed. The Clerk is directed to enter judgment in favor of the defendants and against the plaintiff dismissing the complaint, and it is

So ordered.

---

3. The Forest Hills branch of Brevoort is approximately three miles from the plaintiff bank. The community in which the plaintiff's offices are located are separated from the community in which the Brevoort Branch is located by both distance (three miles) and lack of transportation between the communities.